THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KAVIN SPIVEY, Defendant-Appellant.

First District (4th Division)    No. 1—03—1810

Opinion filed August 5, 2004.

Michael J. Pelletier and Denise D. Keliuotis, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kathryn Schierl, and Nicole Lucero, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Kavin Spivey was convicted of unlawful use of a weapon (UUW) by a felon and aggravated unlawful use of a weapon and was sentenced to 10 years' imprisonment. On appeal, he contends that (1) his conviction for aggravated UUW violates due process in that the statute lacks a culpable mental state and criminalizes innocent conduct; (2) the State failed to establish his conviction for UUW by a felon beyond a reasonable doubt; (3) the trial court based its findings on an incorrect recollection of the evidence and ignored a material discrepancy in the State's testimony; (4) the trial court failed to correctly admonish defendant pursuant to Supreme Court Rule 605(a) (188 Ill. 2d R. 605(a)); and (5) the mittimus should be corrected to reflect that defendant's offense did not involve a vehicle. For the following reasons, we affirm the judgment of the circuit court and correct the mittimus.

## BACKGROUND

Officer Timothy Baker testified that on August 28, 2002, he and his partner, Officer Patrick McDonough, were investigating a continuing complaint of loitering gang members using narcotics in Touhy Huber Park in Chicago. Officer Baker stated that at about 10 p.m., they saw a large group of people in the park. Defendant was seated on a bicycle. They approached the group in their unmarked vehicle, and McDonough got out of the car to speak to the group. The park was lit. As they approached, defendant pedaled away on his bicycle. Baker was directly behind him and saw him take an object that appeared to be a pistol out of his waistband, throw it to the ground, and then flee on his bicycle. Baker followed defendant in his vehicle and McDonough

ran after him on foot. As Baker looked back in his rearview mirror, he could see McDonough bend down to pick something up from the ground, but he did not see him recover the object. Defendant was arrested several blocks away in an alley near Adams and Oakley.

Officer McDonough testified that he was chasing defendant on foot. As defendant fled, McDonough saw him reach into his waistband and drop a handgun to the ground. Defendant was about 25 feet away from him when he dropped the gun. McDonough stated that he saw exactly where the gun landed. As defendant dropped the gun, the vehicle driven by Officer Baker passed by him. McDonough then picked up the weapon, a loaded, uncased, .25-caliber bluesteel handgun, and continued to pursue defendant on foot. When he arrived at Adams and Oakley, defendant was sitting in the back of a marked police car.

Additionally, the parties stipulated that "defendant ha[d] been convicted of a prior felony of aggravated discharge of a firearm, Case No. 98—CR—21155." Defendant rested without presenting any evidence. The trial court found defendant guilty of aggravated UUW and UUW by a felon. He was sentenced to 10 years' imprisonment. Defendant's posttrial motions were denied and he filed a timely appeal.

ANALYSIS

■ Defendant contends the provisions of the aggravated UUW statute under which he was convicted violate substantive due process. He argues that while the statute requires defendant to knowingly carry or conceal a loaded, uncased and immediately accessible firearm (720 ILCS 5/24—1.6(a)(1)(3)(A) (West 2002)), it requires no criminal purpose and therefore potentially punishes innocent conduct. Whether a statute complies with substantive due process requirements is determined under the rational basis test. *People v. Wright*, 194 Ill. 2d 1, 24, 740 N.E.2d 755, 767 (2000). Under that test, a statute is upheld where it " 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 767, quoting *People v. Adams*, 144 Ill. 2d 381, 390, 581 N.E.2d 637, 642 (1991).

Defendant recognizes that his argument was considered and rejected in *People v. Grant*, 339 Ill. App. 3d 792, 791 N.E.2d 100 (2003), and its progeny. See *People v. McGee*, 341 Ill. App. 3d 1029, 794 N.E.2d 855 (2003), *appeal denied*, 205 Ill. 2d 621, 803 N.E.2d 493 (2003); *People v. Marin*, 342 Ill. App. 3d 716, 795 N.E.2d 953 (2003), *appeal denied*, 206 Ill. 2d 631, 806 N.E.2d 1070 (2003); *People v. Pulley*, 345 Ill. App. 3d 916, 803 N.E.2d 953 (2004), *appeal denied*, 208 Ill. 2d 536,

809 N.E.2d 1291 (2004). In these cases, the defendants, like the instant defendant, relied upon the supreme court decisions in *People v. Wright*, 194 Ill. 2d 1, 740 N.E.2d 755 (2000), *People v. Wick*, 107 Ill. 2d 62, 481 N.E.2d 676 (1985), and *People v. Zaremba*, 158 Ill. 2d 36, 630 N.E.2d 797 (1994), to support their contentions of unconstitutionality. Defendant argues, as the defendant in *Grant* argued, that these supreme court cases stand for the broad proposition that whenever a statute contains a mental state of knowledge without a further criminal purpose, the statute is unconstitutional. This argument is erroneous. The court has not established such a broad proposition of law. See, *e.g., People v. Farmer*, 165 Ill. 2d 194, 650 N.E.2d 1006 (1995); *People v. Thoennes*, 334 Ill. App. 3d 320, 777 N.E.2d 1075 (2002) (where knowledge without a criminal purpose was sufficient to withstand the rational basis test). Rather, in *Wright, Wick* and *Zaremba*, the supreme court held that the specific statute at issue did not meet the rational basis test in that the statute was not rationally related to its specific legislative purpose or the means used to accomplish the legislative purpose was not reasonable in that instance.

In *Wright*, the statute at issue made it a felony for certain individuals licensed under the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 1996)) to knowingly fail to maintain records relating to the acquisition and disposition of vehicles and parts at their place of business. The purpose of the statute was to prevent or reduce the transfer or sale of stolen vehicles or their parts; the purpose was not to punish those who made a slight lapse in record keeping without any unlawful purpose. Therefore, where the statute potentially punished innocent conduct, the court held that the statute was not a reasonable means of preventing the trafficking of stolen vehicles and parts. *Wright*, 194 Ill. 2d at 28, 740 N.E.2d at 768-69.

In *Zaremba*, the statute made it a felony to obtain or exert control over property in the custody of any law enforcement agency where the individual has knowledge that the property was stolen. The court found that the statute did not bear a rational relationship to its stated purpose of breaking up "fencing" operations because it potentially punished the lawful actions of a police evidence technician who retained the proceeds of a theft for safekeeping. *Zaremba*, 158 Ill. 2d at 38, 630 N.E.2d at 798.

In *Wick*, the aggravated arson statute made it a felony to knowingly damage a building by fire where the fire injures a fireman or policeman. The court found that the statute was inconsistent with the simple arson statute, which required the offender to knowingly damage by fire another's property without authority or with the intent to defraud the insurer, thus requiring a greater degree of malice. Where

the aggravated arson statute did not require the same unlawful purpose as that required for simple arson, the statute did not bear a reasonable relationship to its stated purpose of providing a more severe penalty for arsonists whose conduct resulted in injury to a fireman or policeman. *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678-79.

▪ In the present case, the statute does not fail the rational basis test. The statute at issue makes it a felony to knowingly possess a loaded, readily accessible, uncased weapon on one's person, except on one's own property or fixed place of business. 720 ILCS 5/24— 1.6(a)(1)(3)(A) (West 2002). Contrary to defendant's contention, the purpose of the statute was not merely to limit possession of firearms by members of street gangs and organized crime figures. Rather, the intended purpose was broader in scope, designed to impose greater punishment for conduct that the legislature has determined creates "inherent dangers to police officers and the general public. This is so even if the person carrying the weapon has no criminal objective." *Grant*, 339 Ill. App. 3d at 806, 791 N.E.2d 100. As we found in *Marin*, there is no question that such a purpose is a legitimate state interest properly regulated by the legislature. Illinois courts have consistently held firearm controls to be within the purview of the State's police power. *Marin*, 342 Ill. App. 3d at 722, 795 N.E.2d at 959, citing *Quilici v. Village of Morton Grove*, 532 F. Supp. 1169, 1182 (N.D. Ill. 1981).

The statute is rationally related to a legitimate governmental purpose because it does not criminalize as a strict liability offense mere lawful gun ownership in any circumstance. Rather, the statute penalizes the *knowing* possession of a weapon with the *aggravating factors* that it be loaded, readily accessible, uncased, and in a specific environment, a circumstance the legislature has determined belies innocent conduct. Penalizing those who knowingly carry or transport weapons in this manner is a rational way to accomplish the legislative goal of improving public safety. *McGee*, 341 Ill. App. 3d at 1037, 794 N.E.2d at 860. Thus, unlike the supreme court cases cited by defendant, the aggravated UUW statute is rationally related to its legislative purpose.

Additionally, the means of accomplishing the legislative purpose are reasonable. Defendant argues, as did the defendant in *Grant*, that the statute subjects innocent conduct to a felony conviction and therefore sweeps too broadly. Defendant again provides us with the remote example of the hunter who receives a call that an emergency has arisen at home. In his haste to attend to the emergency, he returns to his car and drives away with the loaded, uncased gun next to him on the seat of his car. As we have previously stated in *McGee*, this conduct is not innocent. *McGee*, 341 Ill. App. 3d at 1037, 794 N.E.2d at

860 ("[e]ach of the aggravating factors in the statute is a circumstance that belies innocent conduct"). Contrary to defendant's assertion, one can perform an act with a knowing mental state without a criminal purpose where the acts that comprise the offense are criminal in nature. *McGee*, 341 Ill. App. 3d at 1036, 794 N.E.2d at 860. Here, the hunter's actions pose a threat to public safety. Requiring intent would defeat the statute's purpose of "protecting the public and law enforcement officers from the danger of weapons in public places." *Marin*, 342 Ill. App. 3d at 727, 795 N.E.2d at 962.

Indeed, the legislature specifically designed the statute to carve out exemptions that it has determined constitute innocent conduct. For example, section 24—2(b)(4) specifically provides an exemption for those persons who transport weapons even when they are not able to break them down into a nonfunctioning state, as long as the weapons are not immediately accessible. 720 ILCS 5/24—2(b)(4) (West 2002). In the above hypothetical, the hunter could have taken an extra moment to place the weapon in a safe place to conform his conduct to the statute. Accordingly, we find the means utilized are reasonable to accomplish the legislature's objectives.

In support of defendant's argument that *Grant* and its progeny misapplied the rational basis test, defendant cites the United States Supreme Court case of *Staples v. United States*, 511 U.S. 600, 128 L. Ed. 2d 608, 114 S. Ct. 1793 (1994). We find this case lends support to our decision that knowledge is a sufficient mental state under the aggravated UUW statute to satisfy the rational basis test. In *Staples*, the statute at issue made it a felony under the National Firearms Act (26 U.S.C. §§ 5801 through 5872 (1994)) to possess an unregistered machine gun. The statute was silent with respect to a *mens rea* required for a violation. The Supreme Court determined that Congress did not intend to establish a strict liability offense. The government should have been required to prove beyond a reasonable doubt that the defendant knew that his firearm possessed the characteristics that brought it within the statutory definition of a machine gun. *Staples*, 511 U.S. at 619, 128 L. Ed. 2d at 624-25, 114 S. Ct. at 1804. Here, the statute is not silent with respect to a *mens rea*. As we have previously stated, the *mens rea* here is knowledge. The State in this case was required to prove beyond a reasonable doubt that defendant knew that the weapon possessed the characteristics that brought it within the statutory framework, namely, that it was loaded, uncased, immediately accessible, and in a specifically identified environment.

Additionally, we reject defendant's assertion that the court in *Marin* improperly relied upon *Thoennes* and *Farmer* to support its reasoning that knowledge is a sufficient mental state here. In

*Thoennes*, the statute made it a felony for a person to knowingly and falsely represent himself as a peace officer. The court held that the act of knowingly impersonating a peace officer was in itself potentially dangerous and the perpetrator need not have the intent to commit a crime in so doing. *Thoennes*, 334 Ill. App. 3d at 326-27, 777 N.E.2d at 1080. In *Farmer*, the statute prevented a person from knowingly and without authority bringing contraband into a penal institution. The court held that the offender need not possess a criminal intent to smuggle the contraband to an inmate. The knowing possession of the contraband was reasonably related to the objective of the statute. *Farmer*, 165 Ill. 2d at 208-09, 650 N.E.2d at 1013.

Defendant argues that these cases are distinguishable because they fall into a class of "public welfare" offenses that the Supreme Court has noted as exceptions to the general rule of Anglo-American jurisprudence requiring a *mens rea* for criminal punishment. The Supreme Court has discussed these "public welfare" offenses as strict liability offenses that do not require the defendant to know the facts that make his conduct illegal. *Staples*, 511 U.S. at 606, 128 L. Ed. 2d at 616, 114 S. Ct. at 1797. *Thoennes* and *Farmer* are not strict liability cases that dispense with a *mens rea*. In both cases, the State was indeed required to prove that the defendant knew the facts that made his conduct illegal. Therefore, we find the court in *Marin* correctly applied these cases to its analysis. Accordingly, for all of the foregoing reasons, we agree with the result reached in *Grant* and its progeny that the aggravated UUW statute satisfies the rational basis test.

■ We next address defendant's contention that the State failed to establish that he had a prior felony conviction at the time he committed this offense. A conviction for UUW by a felon requires the State to prove beyond a reasonable doubt that defendant had a prior felony conviction. 720 ILCS 5/24—1.1(a) (West 2002). At trial, the parties stipulated that "the defendant has been convicted of a prior felony of aggravated discharge of a firearm, Case No. 98—CR—21155." Defendant acknowledges the language of the stipulation, but argues that it does not support the conclusion that he had the conviction prior to August 28, 2002, the date of the commission of the UUW.

We recently held in *People v. Hill*, 345 Ill. App. 3d 620, 632, 803 N.E.2d 138, 148 (2003), that by presenting testimony through a stipulation, in a brief and summary fashion, the result was to remove from the case any issue concerning that testimony, citing *People v. Polk*, 19 Ill. 2d 310, 315, 167 N.E.2d 185, 188 (1960) (finding that the "stipulation had the effect of eliminating proof which otherwise might have been required"). Additionally, as we stated in *Hill*, the State likely would not have agreed to the stipulation, thereby foregoing the

opportunity to place the certified record of the prior conviction or an authenticated copy of the conviction before the court, if the stipulation was not intended to eliminate the need for such proof at trial. Here, by stipulating to the issue of defendant's prior felony conviction, defendant clearly intended to eliminate that issue from the case and focus on other aspects of the defense. Accordingly, the issue has been waived.

■ We next consider defendant's argument that his right to due process was violated where the trier of fact ignored significant discrepancies in the State's case. Defendant directs our attention to the trial court's findings as follows:

> "Well, the only significant difference that I've heard between the officer's [sic] testimony is that the officer in the squad car said that the distance that the gun *** traveled was five to ten feet and the other officer testified that it was approximately three feet but I think that that can be certainly explained by the fact that you have two different people testifying to two different positions, I think that that is a matter of prospective [sic]. I don't think that that is significant impeachment."

Defendant argues that while the trial judge accurately described one key difference in their testimony, the officers' testimony also differed drastically as to their location during the pursuit. He asserts that Officer Baker testified that he had passed Officer McDonough at the time defendant dropped the gun, but that Officer McDonough testified that Baker was alongside him at that time. He also maintains that the officers disagreed as to the distance between Officer McDonough and defendant during the pursuit. Defendant argues that these discrepancies are material because the location of the officers and their distance from defendant calls into question their ability to see whether defendant actually possessed a weapon.

Taking the evidence in the light most favorable to the State, the record reveals that there were no material discrepancies in the officers' testimony. Baker stated that he saw defendant toss the object that appeared to be a gun, that Officer McDonough was farther behind because he was on foot, and that he if he "had to guess," McDonough was about 40 feet away from him. Baker further testified that he had passed Officer McDonough when McDonough went to pick up the object that defendant had dropped. Baker saw McDonough from his rearview mirror bend down to pick up the object defendant had thrown. McDonough testified that he saw defendant drop the gun from "approximately" 25 feet away. After he dropped the gun, McDonough stated that he never lost sight of the object and recovered the weapon in the field. When the gun hit the ground, Baker had passed

him. McDonough saw exactly where it fell and the gun was sitting right on the ground where he saw defendant throw it.

As the trial court noted, the officers were testifying from their recollection from two different perspectives, one in a vehicle and one on foot. The theory of defendant's case was that the State failed to establish defendant had possession of the gun. While there were minor differences as to the officers' location relative to each other when defendant dropped the gun and differences as to Officer McDonough's distance from defendant at the time he dropped the gun, these distinctions do not amount to material discrepancies here. Rather, what is material here is that both officers saw defendant take out an object that resembled a gun from his waist, that there were no obstacles to their view, that the park was lit, and that McDonough never lost sight of the object and recovered a loaded, uncased weapon in the field which had been immediately accessible to defendant. Accordingly, we find the trial court did not misconstrue the evidence and that defendant was not denied his right to due process.

Defendant next contends he was not properly admonished pursuant to Supreme Court Rule 605(a) (188 Ill. 2d R. 605(a)), and his cause should be remanded to the trial court for proper admonishments. Defendant argues that while the trial court properly admonished him of his right to appeal his convictions, the court did not sufficiently admonish him with respect to his right to file a motion to reconsider his sentence. Specifically, defendant argues that the admonishment was inadequate because the court never informed defendant that any sentencing issue not included in his written motion to reconsider sentence would be waived on appeal.

Here, the record reveals that the trial court informed defendant of the procedural steps necessary to perfect an appeal, but failed to inform defendant about waiving issues related to sentencing if he did not include them in his motion. Defendant filed a motion to reconsider his sentence, which was denied. He does not raise any argument that there were specific issues that he was precluded from raising because they were deemed waived by his not having been admonished properly. Defendant has not established that he suffered any prejudice as a result of the trial court's omission or that he was denied real justice.

On these same facts, this court has previously found a remand unnecessary. See *People v. Valentin*, 347 Ill. App. 3d 946, 808 N.E.2d 1056 (2004); *People v. Garner*, 347 Ill. App. 3d 578, 586, 808 N.E.2d 10, 16 (2004); *People v. Williams*, 344 Ill. App. 3d 334, 339, 800 N.E.2d 168, 172 (2003) (to require remand here would "elevate form over substance without serving the ends of real justice"). Accordingly, we need not remand for proper admonishments.

■ Lastly, defendant argues, and the State agrees, that the mittimus incorrectly lists the offense as involving a vehicle. Defendant requests that the word "vehicle" be removed from his mittimus so as to properly reflect defendant's conviction for aggravated unlawful use of a weapon. We agree. Pursuant to Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we correct the mittimus to remove the word "vehicle" to properly reflect defendant's conviction for aggravated UUW.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed; mittimus corrected.

QUINN, P.J., and HARTMAN, J., concur.