FOURTH DIVISION   March 24, 2005 

No. 1-03-3239

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )                 )

PRINCE DAVIS, ) Honorable

) James A. Schreier, 

 Defendant-Appellant. ) Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

Following a bench trial, defendant Prince Davis was convicted of residential burglary and sentenced to 10 years' imprisonment.  On appeal, defendant contends that he was denied effective assistance of trial counsel based on counsel's failure to present an adequate closing argument.  Defendant also contends that the trial court failed to admonish him of his right to appeal his sentence, thus requiring that his case be remanded for strict compliance with Supreme Court Rule 605(a) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001).  We affirm.

At trial, David Warren testified that at 8:30 a.m. on July 19, 2002, he, his fiancée and his parents left their home for a doctor's appointment.  When they returned home at 12:30 p.m., Warren observed that the back door of their house had been forced open, the window next to the door had been smashed, and glass was scattered on the porch.  On the floor inside, Warren saw more glass and a brick from his yard, which apparently had been thrown through the window.  Warren then discovered that several items were missing from the home, including jewelry belonging to his mother and his fiancée, a pair of binoculars and a camera.  Warren testified that he did not know defendant and never gave him permission to enter his home or take any of his possessions.

Warren also testified that on July 1, 2002, Pamela Gordon, a caretaker employed by Catholic Charities, was in his home to care for his 79-year-old mother, who suffered from Alzheimer's Disease.  On that day, the July 19, 2002, doctor's appointment was posted on the kitchen calendar.  Gordon was not in the Warren home on any other occasion.

The parties stipulated that on the day of the burglary, Chicago police evidence technician McNicholas lifted five latent friction ridged impressions from broken kitchen window glass at the Warren home and submitted them for analysis in the Automated Fingerprint Identification System (AFIS).  The parties further stipulated that Chicago police latent print examiner Frederick Scott examined these impressions and found that they matched defendant's fingerprints, which were obtained from AFIS.

Chicago police detective Gerald Cruz testified that after AFIS indicated a match with defendant, he left a note at defendant's indicated address stating that he needed to speak with him.  Defendant appeared at police headquarters on March 30, 2003, at which time Detective Cruz advised him of his 
Miranda
 rights and told him that he was investigating a July 19, 2002, burglary at the Warrens' home.  Defendant said that he was familiar with the address because he picked up his fiancée, Pamela Gordon, from work there on July 1, 2002.  Defendant also told him that, on that date, he entered the house through the front door, used the bathroom, then immediately exited the home through the same door.  Detective Cruz did not recall defendant saying that he had to leave through the back door because the Warrens returned home while he was in the bathroom.

When Detective Cruz asked defendant how his fingerprints got in the bedroom, defendant replied "well, Officer, you got me." Defendant then told him that he wanted to leave Gordon out of it, and said that he smashed a window and entered the rear of the Warrens' home, stole some items, then sold them for money.

Pamela Gordon testified for the defense that on July 1, 2002, she was employed as a home health care worker with Catholic Charities and worked a five-hour assignment at the Warren home.  Defendant, her boyfriend, dropped her off at the address at 11 a.m., and when he returned at 4 p.m., Gordon told him that the Warrens had not yet returned home and asked him to wait for her in his car.  Defendant complied, but 30 minutes later, he came to the door and told Gordon that he had to leave because he needed to use the washroom.  Gordon let him enter the Warrens' house to use the washroom.

Gordon testified that the Warrens arrived home when defendant was inside the house and parked their car out front. Gordon told defendant to leave through the back door, and he did. She estimated that defendant was in the home for three to five minutes, and during that time, he was only in the first-floor washroom and never went to any other part of the house.  Gordon denied that she subsequently told Detective Cruz that defendant exited the house through the front door or that defendant was never in the Warrens' kitchen.  She also did not recall defendant touching any glass on July 1, 2002.

Defendant testified that about 11 a.m. on July 1, 2002, he dropped Gordon off at the Warrens' home and returned to pick her up at 4 p.m.  He then testified to the events described by Gordon which placed him inside the house when the Warrens returned and required that he rush out the back door.  Defendant testified that he fumbled with the locks on the back door, but then opened them and left.  He denied entering any other part of the house, returning there two weeks later, throwing a brick through the door, or taking any items from the house.

Defendant acknowledged talking to Detective Cruz, but denied telling him that he broke the kitchen door to enter the Warrens' house or that he had taken jewelry from a bedroom.  Defendant maintained that the only time he was at the Warrens' house was July 1, 2002, and that he told Detective Cruz that he entered the house through the front door and exited through the back door. Defendant also testified that when Detective Cruz told him that police found his fingerprints in the Warrens' house, he replied that they must have found them on the back door because he was only at the house on July 1, 2002.

In rebuttal, Detective Cruz testified that on March 30, 2003, Gordon told him that when defendant finished using the Warrens' bathroom, he exited the house through the front door, and he never entered the rear part of the house, including the kitchen.  He stated that Gordon never told him that the Warren family came home when defendant was inside the house, that she told defendant to run out the back door, or the length of time that defendant had been inside the house.  Detective Cruz also stated that defendant never told him that if his fingerprints were found in the Warrens' house, they had to be on the back door because he was only there on July 1, 2002.

In closing, defense counsel argued that the only evidence against defendant were his fingerprints on the glass at the rear of the home and his alleged statements to Detective Cruz, which defendant denied making.  Counsel further argued that the reasonable explanation for defendant's fingerprints being found on the glass was that they were placed there on July 1, 2002, two weeks prior to the burglary, as defendant fumbled with the locks and rushed out the back door of the Warren home after using their bathroom.  Counsel also argued that defendant's explanation as to how his fingerprints were on the glass was credible and that Gordon testified credibly.  Finally, counsel reminded the court that defendant had denied making the exculpatory statements to Detective Cruz and argued that "it doesn't make sense" that defendant would know that the Warrens would not be home the morning of July 19, 2002.

The trial court found that defendant and Gordon "testified to a contrived defense" which the court "totally disbelieved." The court then found defendant guilty of residential burglary.

Defense counsel filed a motion for a new trial, which the trial court denied.  The court then sentenced defendant to 10 years' imprisonment, and admonished him as follows:

"Defendant has [a] right to appeal.  Before he files a notice of appeal -- strike that.  He must file a notice of appeal in writing within 30 days of today's date.  If he is without money, a free lawyer and free transcript will be given to him."

Later that day, defendant's case was recalled, and defense counsel presented an oral motion to reconsider sentence.  The trial court denied the motion, and counsel immediately filed a notice of appeal.

In this court, defendant first contends that he received ineffective assistance of trial counsel because counsel failed to present an adequate closing argument.  Defendant contends that counsel failed to challenge a major flaw in the State's case and should have argued that if he entered the home by throwing a brick through the window, then it is unlikely that his fingerprints would have been found on the broken window glass because he did not have to touch the glass to break it.  Defendant concedes that his fingerprints were on the glass and acknowledges that counsel's argument may be considered trial strategy; however, he asserts that the evidence was closely balanced, that he and Gordon provided an innocent explanation for his prints being on the glass, and that if counsel presented this argument, the trial court "may" not have found him guilty.

The State maintains that counsel zealously represented defendant and presented the exact defense that defendant is now asserting by arguing that defendant's prints were placed on the glass when he exited the house on July 1, 2002.  The State contends that counsel's argument was the product of sound trial strategy and that defendant has not shown that he sustained any prejudice as a result of counsel's argument.

Claims of ineffective assistance of counsel are evaluated under the two-prong test handed down by the United States Supreme Court in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  
People v. Graham
, 206 Ill. 2d 465, 476 (2003).  To support a claim of ineffective assistance of trial counsel, defendant must demonstrate that (1) counsel's representation was deficient, and (2) as a result, he suffered prejudice that deprived him of a fair trial.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  To establish prejudice, defendant must show there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different.  If defendant cannot prove that he suffered prejudice, this court need not determine whether counsel's performance was deficient.  
Graham
, 206 Ill. 2d at 476.

Prejudice is presumed where defendant can demonstrate that trial counsel failed to perform any meaningful adversarial testing of the State's case.  
People v. Milton
, 354 Ill. App. 3d 283, 289 (2004), citing 
United States v. Cronic
, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984).  However, defendant must overcome the strong presumption that counsel was not incompetent and that his actions were a part of sound trial strategy.  
Milton
, 354 Ill. App. 3d at 289.  The theory pursued by defense counsel in closing arguments is a matter of trial strategy, and the fact that the trier of fact did not accept that theory does not mean that counsel was ineffective. 
People v. Franklin
, 135 Ill. 2d 78, 119 (1990).  On review, this court evaluates the reasonableness of counsel's conduct from his perspective in light of the totality of the circumstances in the case.  
People v. Gill
, 264 Ill. App. 3d 451, 461 (1992).

Here, we find that defense counsel zealously argued defendant's theory of the case during closing argument.  Counsel attempted to persuade the court that there was a reasonable explanation for defendant's fingerprints appearing on the glass, 
i.e.
, that defendant left the prints there two weeks before the burglary when he fumbled with the locks and rushed out the back door after using the bathroom.  Counsel also tried to convince the court that defendant and Gordon testified credibly, and explicitly challenged the State's theory that defendant knew that the Warrens would not be home on the morning of July 19, 2002. Accordingly, we find that defendant's claim that counsel failed to present an adequate closing argument is belied by the record and that he failed to show that he was prejudiced by counsel's failure to present the arguments suggested by defendant in this appeal.

Defendant next contends that his case must be remanded to the trial court for strict compliance with Supreme Court Rule 605(a) because the court failed to admonish him of his right to appeal his sentence.  Defendant acknowledges that defense counsel presented an oral motion to reconsider the sentence but argues that because the motion did not include any specific challenges, it was insufficient to preserve issues for appeal, and that he should be given an opportunity to file a "new" motion to reconsider his sentence.

The State acknowledges the omissions in the trial court's admonishments, but contends that remand is not required because defendant has not raised any sentencing issues on appeal.  Thus, the State maintains, defendant was not denied real justice and there is no basis for relief.  Our review of the trial court's compliance with this supreme court rule is 
de
 
novo
.  
People v. Breedlove
, 213 Ill. 2d 509, 512 (2004).

As a threshold matter, we note that the requirement of a written motion is waived where defendant makes an oral motion to reconsider his sentence and the State does not object.  
People v. Shields
, 298 Ill. App. 3d 943, 950 (1998).  When that occurs, as it did here, the reviewing court may address sentencing issues on appeal based on any ground that appears in the record, despite defendant's failure to file the written motion.  
Shields
, 298 Ill. App. 3d at 950-51.

Turning to defendant's challenge to the sentencing admonishments, Rule 605(a) states, in pertinent part:

"(3) At the time of imposing sentence or modifying the conditions of the sentence, the trial court shall also advise the defendant as follows:

***

B. that prior to taking an appeal, if the defendant seeks to challenge the correctness of the sentence, or any aspect of the sentencing hearing, the defendant must file in the trial court within 30 days of the date on which sentence is imposed a written motion asking to have the trial court reconsider the sentence imposed, or consider any challenges to the sentencing hearing, setting forth in the motion all issues or claims of error regarding the sentence imposed or the sentencing hearing;

C. that any issue or claim of error regarding the sentence imposed or any aspect of the sentencing hearing not raised in the written motion shall be deemed waived[.]" Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a)(3)(B), (a)(3) (C), eff. October 1, 2001.

In making his argument, defendant relies principally on 
People v. Mazar
, 333 Ill. App. 3d 244 (2002), where the defendant was sentenced prior to the amendment of Rule 605(a) that required admonishments regarding postsentencing motions.  In 
Mazar
, the defendant acknowledged that he did not raise any sentencing errors in his appeal, but argued, nevertheless, that he was denied due process because the trial court failed to admonish him of the need to file a motion to reconsider his sentence.  Although the appellate court disagreed with Mazar's argument, it relied on the holdings of guilty plea cases and remanded his case for admonishment under the amended Rule 605(a) on the basis of fundamental fairness.  
Mazar
, 333 Ill. App. 3d at 257-59.

In 
Breedlove
, 213 Ill. 2d at 515, the supreme court declined to follow the reasoning articulated in 
Mazar
 and recognized the dispositive difference between defendants who plead guilty and those who are convicted following a trial.  The court noted that the filing of a proper postplea motion is a condition precedent for a guilty plea defendant to perfect his appeal, and when defendants followed incorrect advice, their appeals were dismissed.  
Breedlove
, 213 Ill. 2d at 516.

In contrast, a defendant who is convicted following a trial, such as defendant here, does not lose his appeal rights if he fails to file a postsentencing motion due to improper admonishments.  
Breedlove
, 213 Ill. 2d at 520.  Moreover, even where a defendant fails to file a post-sentencing motion, his sentence may still be reviewed on appeal under the plain error doctrine. 
Breedlove
, 213 Ill. 2d at 520.  Accordingly, we find defendant's reliance on 
Mazar
 unpersuasive.

Although 
Breedlove
 and 
Mazar
 interpreted the preamended version of Rule 605(a), and the present case involves the 2001 amended rule, we find that the amendment to Rule 605(a) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001) does not affect our application of the reasoning followed in 
Breedlove
 to this case.  The definitive difference between defendants who plead guilty and those who are convicted at trial is the same, and we can review sentencing claims under the plain error doctrine.

Currently, a conflict exists among the districts of the appellate court as to whether the trial court must comply with the amended Rule 605 admonishments strictly or substantially.  The courts that have required strict compliance have primarily relied on analogizing to guilty plea cases.  See, 
e.g.
, 
People v. Bagnell
, 348 Ill. App. 3d 322 (3d Dist. 2004); 
People v. Glenn
, 345 Ill. App. 3d 974 (2d Dist. 2004); 
People v. Parker
, 344 Ill. App. 3d 728 (3d Dist. 2003).  However, we find that the reasoning in these cases has been discredited by the supreme court's reasoning in 
Breedlove
, and we will adhere to the rule adopted by the First District that only substantial compliance is required and that remand is unnecessary where defendant was not denied real justice nor prejudiced by the trial court's admonishments. 
People v. Spivey
, 351 Ill. App. 3d 763, 771 (2004); 
People v. Valentin
, 347 Ill. App. 3d 946, 955 (2004); 
People v. Garner
, 347 Ill. App. 3d 578, 586 (2004).

In this case, although the trial court failed to advise defendant that he needed to file a written motion to reconsider his sentence, and that such motion was necessary to preserve any sentencing issues for appeal, we find that remand is not required.  Defendant has not contended that he was prejudiced or denied real justice by the court's omission, nor has he attempted to raise any sentencing issues on appeal.  Instead, he asserts that the omission, 
per
 
se
, requires remand.  Remand, however, is indicated only where defendant was prejudiced by the omission or denied real justice.  
Garner
, 347 Ill. App. 3d at 586.  Here, we find further support for this conclusion in the fact that the State did not object to defense counsel's oral motion to reconsider sentence, leaving defendant free to raise on appeal sentencing issues based on any ground that appeared in the record.  
Shields
, 298 Ill. App. 3d at 950-51.

For these reasons, we affirm the judgment of the circuit court of Cook County. 

Affirmed.

REID, P.J., and GREIMAN, J., concur.