THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW RADFORD, Defendant-Appellant.

First District (1st Division)   No. 1—04—0661

Opinion filed August 15, 2005.

Michael J. Pelletier and Arianne Stein, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kathryn Schierl, Sally L. Dilgart, and Robyn Molaro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McBRIDE delivered the opinion of the court:

Following a jury trial, defendant Andrew Radford was convicted of attempted armed robbery, attempted aggravated robbery, and aggravated battery. The court sentenced him to concurrent prison terms of 10 years for each offense. Defendant contends on appeal that the trial court erred when it failed to adequately inquire into and evaluate his *pro se* posttrial claims of ineffective assistance of trial counsel. He also contends that his conviction for attempted aggravated robbery should be vacated because it arose from the same physical act as his conviction for attempted armed robbery. He further contends that his extended-term sentences for attempted aggravated robbery and aggravated battery were improper because section 5—8—2 of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—2 (West 2002)) authorizes an extended-term sentence for only his most serious offense, attempted armed robbery. He also contends that the trial court failed to properly admonish him regarding his appeal rights, as required by Supreme Court Rule 605(a), and thus this cause should be remanded for proper admonishments. 210 Ill. 2d R. 605(a). Lastly, defendant contends that compulsory extraction and storage of his

DNA, as required by Code section 5—4—3 (730 ILCS 5/5—4—3 (West 2002)), violates his constitutional right to be free from unreasonable searches and seizures.

Defendant was charged by indictment with attempted armed robbery, attempted aggravated robbery, and aggravated battery. The attempted armed robbery count alleged that defendant, while armed with a glass bottle, "grabbed Jose Gonzalez and demanded money, which constituted a substantial step towards the commission of the offense of armed robbery." The attempted aggravated robbery count alleged that defendant "grabbed Jose Gonzalez and demanded money while indicating that he was armed with a firearm, which constituted a substantial step toward the commission of the offense of aggravated robbery." The three aggravated battery counts all alleged that defendant "struck Shantae Gonzalez about the body with a bottle."

At trial, Jose Gonzalez testified that, at about midnight on February 24, 2003, he and his wife, Shantae Gonzalez, were going to a store at the corner of Division Street and Pulaski Road. Jose parked across Pulaski Road from the store and was crossing the road when he saw defendant standing under a streetlight at a bus stop at the same intersection. Defendant said "rocks and blows," and Jose thus believed that defendant was selling drugs. Jose said that he was "not about that," and Jose and Shantae continued on into the store. While making a purchase, Jose saw through the store window that defendant was now standing by the store's exit door.

As Jose and Shantae left the store, defendant grabbed Jose from behind and shoved something into his back. It felt to Jose like a firearm because it was a circular object. Defendant told Jose to "give me your shit or I'm gonna blast you." Defendant then rifled through Jose's pockets with his right hand, still pressing the object against Jose's back. Defendant had not removed anything from Jose's pockets when Shantae told Jose that the object was "not a gun." Jose turned around and saw defendant's hand, holding a glass bottle, moving away from Shantae's face. Jose then noticed that Shantae's face was bleeding. Defendant fled westward on Division Street, bottle still in hand, and Jose pursued him briefly. Jose then went to the corner store to call the police. As he left the store, he saw a police vehicle. He flagged it down and told the officer what had happened, describing defendant's clothing (all black) and in which direction he had fled. The officer left, returning about three minutes later with defendant in custody. Jose identified defendant as his assailant.

Shantae Gonzalez testified that, as she and Jose were crossing the street from their vehicle to the corner store, she saw defendant on the corner yelling "rocks and blows." She and Jose told defendant that they were "not about that" and continued walking toward the store.

As they came out of the store, Shantae heard whispering and turned around. She saw defendant grab Jose around his neck from behind and point something toward Jose's back. Defendant demanded Jose's money "or I'll blast you," and Shantae whispered to Jose to "do whatever he says 'cause we got a baby at home." As defendant began rifling through Jose's pockets, Shantae could see that the object he was pressing against Jose's back was a bottle rather than a firearm. Shantae told Jose that "it's not a gun," and defendant then struck Shantae with the bottle, cursing her as he did so. The bottle struck her in the lip and she bled profusely. Defendant fled down Division Street, and Jose chased him. Shantae looked for the bottle, in case defendant had dropped it, but did not find it. Jose stopped at the corner store and then stopped a passing police vehicle to report the crime. The officer left and returned less than two minutes later with defendant in custody, and Shantae identified him as her assailant. Shantae was brought by ambulance to a hospital, where she received 16 stitches for her cut lip. Her lip was still scarred as of trial, despite three visits to a plastic surgeon.

Officer Salvador Soraparu testified that, as he patrolled on February 24, 2003, he was flagged down shortly after midnight by Jose Gonzalez at the intersection of Pulaski Road and Division Street. Jose told Officer Soraparu that he had just been robbed by a black man in dark clothing who fled westbound on Division Street. Officer Soraparu left, proceeding west on Division. After about three minutes, he saw defendant walking rapidly southbound on Keystone Avenue, the next street west of Pulaski Road. Nobody else was in the vicinity, and Officer Soraparu and his partner, Officer Christopher Dobeck, took defendant into custody. They returned immediately to the Pulaski/Division intersection, where Jose and Shantae identified defendant as their attacker. Officer Soraparu then saw that Shantae's mouth was bleeding profusely.

The parties stipulated that Jose Gonzalez was convicted in 2000 of the offense of possession of a stolen motor vehicle.

The jury found defendant guilty of all three charges: attempted armed robbery, attempted aggravated robbery, and aggravated battery.

Defendant submitted to the court an undated *pro se* letter requesting a new trial, alleging that one of the jurors was his "mail carrier and has been for a while *** telling everyone in the community that she got rid of a lowlife and told my mother that I didn't belong on the street and that I needed to be locked up like the [animal] that I am." He also stated that "if my witness was called and my lawyer would have did a halfway good job that I would be at home with my family."

At the hearing on defense counsel's standard posttrial motion, the

court acknowledged receipt of defendant's *pro se* letter and the following colloquy occurred.

"THE COURT: Have you talked to your client about this?

MR. BENESH [Defendant's Attorney]: Yes, we have.

THE COURT: Now tell me where you are going with this investigation?

MR. BENESH: There is a woman mentioned within the letter—

THE COURT: Says a juror is his mail carrier. She mentions after the fact after hearing the evidence and after agreeing with all the other jurors they got a low life off the street. Is there any indication here that she had some predisposition before she sat on the jury in his case or that she just commented about how she felt about it after the fact?

MR. BENESH: There is an indication that she was familiar with [defendant] and there is an indication that she was familiar with his family.

THE COURT: What is the indication because I don't see any of that here except after the fact she made some comments, which jurors are free to make, after the fact. There is a difference between before the fact and after the fact. If a juror makes some statement after the fact, it doesn't mean that there was any problem with them sitting on the jury before the fact.

MR. BENESH: I would agree with that, your Honor. In the interest of completeness, the fact that there is a mention of who she is telling. There is an indication that she knew who [defendant] was before the fact and that's a concern.

THE COURT: Motion defendant. But you tread carefully here. You have an absolute right to investigate that which is done so in good faith and relevant; but if I feel that jurors are being harassed for doing their civic duty, I will take a very dim view of that. So you make sure that you are operating in the best of faith.

MR. BENESH: Oh, absolutely, sir."

After a continuance of about two months "for post-trial motions," defense counsel rested on an amended posttrial motion which added to the standard posttrial motion an allegation "that the jury was furnished a *Prim* instruction on the record without lead counsel for the defense [being] given the opportunity to be present in the courtroom." The court ruled that the "post-trial motions for new trial that are addressed by the Court, either pretrial or at the time of the trial, the Court does not believe error occurred either pretrial or at the trial. Accordingly, motion for new trial is respectfully denied."

At sentencing, the court sentenced defendant to concurrent prison terms of 10 years for each of defendant's three convictions, the sentences for attempted aggravated robbery and aggravated battery being extended-term sentences. The court then admonished defendant:

"You have a right to file an appeal regarding the finding of the court and to ask [that] the sentence be modified. To do anything [*sic*] of those things you have to fill a notice of appeal or motion to [modify] your sentence in writing within 30 days. If you cannot afford a lawyer or a transcript, they will be provided free of charge."

Defense counsel filed a motion to reduce sentence, alleging in part that the "State failed to prove eligibility for enhanced or extended term." At the hearing on the motion, counsel stood on the written motion, which the trial court denied. This appeal timely followed.

Defendant first argues that the trial court erred when it failed to conduct an inquiry into his *pro se* posttrial claims of ineffective assistance of trial counsel, and under *People v. Krankel*, 102 Ill. 2d 181 (1984), we should remand for a hearing on defendant's claims. Defendant contends that the statement "if my witness was called and my lawyer would have did a halfway good job that I would be at home with my family" from his *pro se* letter to the trial judge was sufficient to raise a claim of ineffective assistance of counsel. We disagree and find that defendant's letter failed to make an adequate claim of ineffective assistance of counsel and the trial court was not required to consider defendant's letter as a motion for new counsel for the reasons that follow.

In *People v. Lewis*, 165 Ill. App. 3d 97, 109 (1988), the reviewing court held that defendant's claim of ineffective assistance of counsel was waived on appeal because other than claims in a letter to the trial court that defendant was not "properly defended," defendant failed to make any claims of ineffective assistance of counsel and failed to request new counsel in his letter or at any posttrial proceedings. The *Lewis* court reasoned that "while the trial judge may, in some instances, have a responsibility to act on letters mailed by a defendant to the court, here, defendant subsequently appeared in court with counsel and could have properly presented any matter to the court. Defendant's letter, then, cannot be regarded as a motion or a request for substitute counsel." *Lewis*, 165 Ill. App. 3d at 109. Similarly, in *People v. Sperow*, 170 Ill. App. 3d 800, 813 (1988), the defendant's claim of ineffective assistance of counsel was deemed waived because he "failed to make specific written allegations of ineffective assistance of counsel and did not raise the issue before the court during hearing on his post-trial motion." As the court stated in *People v. Reed*, 197 Ill. App. 3d 610, 612 (1990), "[w]hile we do not suggest that a *pro se* claim of ineffective trial counsel need take a specific form, we cannot expect the trial court to divine such a claim where it is not even arguably raised."

■ With those cases in mind, we consider the fact that the only comment in defendant's letter that referred to his trial counsel is a

remark that if his lawyer "did a halfway good job," then defendant would be at home with his family. Defendant also complains of a witness that he wanted to have called, but did not expand on how this alleged error would have changed the outcome and why it was his counsel's fault or even who this witness was. There is nothing further in defendant's letter relating to his trial counsel. Additionally, defendant did not assert any claim of ineffective assistance of counsel at his posttrial hearing when the trial court presented defendant's letter to both parties. Defendant was present and could have raised any claims of ineffective assistance of counsel before the trial court at that time. Accordingly, we find defendant's claim of ineffective assistance of counsel to be waived.

■ Furthermore, the *ex parte* letter from defendant to the trial court does not amount to a motion. *Pro se* litigants are presumed to have full knowledge of applicable court rules and procedures, including procedural deadlines with respect to filing motions. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 528 (2001). Cook County Circuit Court Rule 17.1 states that "[n]o judge shall permit and no lawyer shall engage in ex parte communications, unless allowed by law, in connection with any matter pending before said judge." Cook Co. Cir. Ct. R. 17.1 (eff. February 1, 1985). Additionally, the Code of Judicial Conduct provides that "[a] judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." 188 Ill. 2d R. 63A(4). *Pro se* defendants should not be permitted to engage in *ex parte* communications "unless allowed by law, in connection with any matter pending before said judge." If defendant wishes to file a motion alleging ineffective assistance of counsel, defendant should file a motion rather than send an *ex parte* letter that is barred by court rules and force the trial court to analyze it in order to determine if the defendant is raising a claim of ineffective assistance of counsel.

In the present case, the trial court acted in the proper and correct manner in dealing with an *ex parte* communication. "If an *ex parte* communication in connection with any matter pending before the judge occurs, the judge shall disclose the circumstances and substance of said communication to all parties of record at the next hearing in open court and, if a court reporter is available, on the record." Cook Co. Cir. Ct. R. 17.2 (eff. February 1, 1985). At defendant's posttrial hearing, the court presented defendant's letter to both attorneys and granted two continuances in order for defendant's counsel to investigate the allegations made about a juror. The letter was discussed and defendant did not object to the way the trial court characterized his complaints.

Even if defendant's letter was sufficient to raise a claim of ineffective assistance of counsel, the trial court still did not need to reach *Krankel* because defendant's claim was conclusory.

Generally, a trial court cannot consider *pro se* motions filed while a defendant is represented by counsel. *People v. Milton*, 354 Ill. App. 3d 283, 292 (2004). However, a defendant represented by counsel may raise *pro se* claims of ineffective assistance of counsel so long as he or she raises specific claims with supporting facts. *Milton*, 354 Ill. App. 3d at 292. A bald allegation that counsel rendered inadequate representation is insufficient for the trial court to consider. *Milton*, 354 Ill. App. 3d at 292. After a defendant has filed a detailed *pro se* motion, the trial court must conduct an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel, and the sufficiency of this inquiry is the primary focus for the reviewing court. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). In *Moore*, the supreme court delineated three methods in which a trial court may conduct its inquiry: (1) the trial court may have the trial counsel answer questions and explain the facts and circumstances surrounding the defendant's allegations; (2) the trial court may discuss the allegations with the defendant; and (3) the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. *Moore*, 207 Ill. 2d at 78-79; see also *People v. Serio*, 357 Ill. App. 3d 806, 817 (2005). Where a trial court's inquiry into the defendant's allegations reveals that they are conclusory, misleading, or legally immaterial, and thus do not present a colorable claim of ineffective assistance of counsel, the court need not conduct further inquiry into the allegations. *Serio*, 357 Ill. App. 3d at 817.

In the instant case, defendant failed to allege any specific claims of ineffective assistance of counsel nor did he point to any facts to support any incompetence on the part of his trial counsel. Defendant merely mentions a witness whose testimony he believes would have resulted in his acquittal, but does not name the witness or discuss the exculpatory testimony that would have been given. Defendant made one conclusory statement about this witness without any explanation and does not sufficiently present a colorable claim of ineffective assistance of counsel. The trial court adequately evaluated defendant's claims under *Moore* because it was familiar with defendant's counsel's performance at trial and defendant's lack of detailed allegations of defendant's counsel's ineffective performance. Since defendant's letter failed to sufficiently set out a claim of ineffective assistance of counsel, the trial court properly concluded that it need not conduct any further

inquiry. Defendant's letter does not amount to a claim of ineffective assistance of counsel, and the trial court's actions were proper.

■ Defendant also contends, and the State concedes, that his conviction for attempted aggravated robbery should be vacated because it arose from the same physical act as his conviction for attempted armed robbery. The parties are correct. Our supreme court has clearly held that "the indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained." *People v. Crespo*, 203 Ill. 2d 335, 345 (2001). Here, the same act was alleged as the basis of both the attempted armed robbery charge and the attempted aggravated robbery charge: when defendant "grabbed Jose Gonzalez and demanded money." We therefore vacate defendant's conviction for attempted aggravated robbery. See *People v. Lee*, 213 Ill. 2d 218, 226-27 (2004) (when more than one conviction arises from the same physical act, the conviction for "the less serious offense must be vacated"); 720 ILCS 5/18—2, 18—5 (West 2002) (armed robbery is a Class X felony, while aggravated robbery is a Class 1 felony); 720 ILCS 5/8—4(c) (West 2002) (attempt to commit a Class X felony is a Class 1 felony, and attempt to commit a Class 1 felony is a Class 2 felony).

The parties, however, dispute what effect vacatur of defendant's conviction and sentence for attempted aggravated robbery has upon his other sentences. Defendant argues that the case must be remanded for a general resentencing, because "the extent to which the vacated conviction[ ] influenced sentencing would be difficult for this Court to discern." The State responds that resentencing is not necessary because there is no indication that the trial court's sentence for attempted armed robbery or aggravated battery was affected by defendant's conviction for attempted aggravated robbery.

We agree with the State.

> "When a defendant receives multiple convictions, a new sentencing hearing is not warranted when a conviction is vacated where there is nothing in the record to indicate that the vacated conviction had any effect on the other sentences. *** A reviewing court cannot conclude, solely from a trial court's imposition of separate sentences for multiple convictions, that the sentence imposed for one offense has been influenced by the conviction or sentence for another offense." *People v. Shelton*, 252 Ill. App. 3d 193, 209 (1993), citing *People v. Payne*, 98 Ill. 2d 45, 55 (1983).

We have reviewed the transcript of the sentencing hearing and find no indication that the trial court increased defendant's sentences for attempted armed robbery or aggravated battery due to his conviction for attempted aggravated robbery. Indeed, the only aspect of defendant's instant offenses (as opposed to his prior convictions) that the court

expressly addressed before imposing sentence was that "he did smack a woman in the face with a bottle," a matter clearly related to the aggravated battery conviction. We therefore find that our vacatur of the attempted aggravated robbery conviction does not require a remand for resentencing.

■ Defendant also contends that his extended-term sentences for attempted aggravated robbery and aggravated battery are invalid, because, under Code section 5—8—2, an extended-term sentence should be imposed only on the most serious offense, which in defendant's case was attempted armed robbery. The State concedes that the sentence for attempted aggravated robbery should be vacated but argues that defendant's extended-term sentence for aggravated battery was based on defendant's unrelated course of conduct toward a different victim.

Section 5—8—2, governing extended-term sentences, provides:

"A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present." 730 ILCS 5/5—8—2 (West 2002), citing 730 ILCS 5/5—5—3.2(b), 5—8—1 (West 2002).

Our supreme court has interpreted this statute to authorize extended-term sentences " 'on separately charged, differing class offenses that arise from unrelated courses of conduct.' " (Emphasis omitted.) *People v. Bell*, 196 Ill. 2d 343, 350 (2001), quoting *People v. Coleman*, 166 Ill. 2d 247, 257 (1995). Stated another way, "where lesser and greater class offenses are not committed as part of a single course of conduct, an extended term may be imposed on a lesser offense." *People v. Hummel*, 352 Ill. App. 3d 269, 271 (2004). The relevant inquiry is whether there was a substantial change in the nature of defendant's criminal objective. *Bell*, 196 Ill. 2d at 351.

Here, defendant was attempting to rob Jose Gonzalez at the "gunpoint" of a bottle, rifling through Jose's pockets as he grabbed Jose from behind. When Shantae Gonzalez realized that defendant was holding a bottle rather than a firearm and pointed this out to Jose, defendant struck Shantae with the bottle and cursed her, then fled the scene. We considered a similar case in *Hummel*, where we stated:

"Here, there are some similarities to [*People v. Arrington*, 297 Ill. App. 3d 1 (1998)]. The evidence shows that the defendant herein, just like the defendant in *Arrington*, battered the employee only after she blocked the defendant's escape route. However, we cannot agree with the court's conclusion in *Arrington* that any acts com-

mitted while a defendant is attempting to escape from the scene of a robbery are necessarily part of the same overarching criminal objective. Rather, we find that one must look to the circumstances of the occurrence to determine whether the objective changed when the use of force became necessary in order to effectuate the escape." *Hummel*, 352 Ill. App. 3d at 272.

Here, there is no indication that Shantae was trying to stop defendant from fleeing the scene or even that she happened to be standing in his escape path. Defendant could have merely fled, without striking Shantae with a glass bottle, once it was apparent that he could not complete the robbery attempt. However, he did not do so, and one could reasonably conclude from his acts that he acted out of avarice with the goal of taking Jose's property until Shantae thwarted that goal, whereupon he acted out of anger with the goal of injuring Shantae. Both the nature and the target of defendant's actions changed. Following *Hummel*, we find that the nature of defendant's criminal objective changed between the acts supporting his attempted armed robbery conviction and the act supporting his aggravated battery conviction. The trial court therefore did not err when it imposed an extended sentence on defendant's lesser offense of aggravated battery.

■ Defendant also contends that the trial court failed to properly admonish him pursuant to Rule 605(a) regarding his appeal rights and the necessary steps to preserve an appellate challenge to his sentence.

Defendant cites to various cases where, faced with erroneous Rule 605(a) admonishments, this court has remanded to the circuit court for proper Rule 605(a) admonishments and to allow defendant to file a postsentencing motion. *People v. Bagnell*, 348 Ill. App. 3d 322, 325-27 (2004); *People v. Glenn*, 345 Ill. App. 3d 974, 984-85 (2004); *People v. Taylor*, 345 Ill. App. 3d 1064, 1082-83 (2004). These cases, noting that our supreme court has mandated strict compliance with the similar admonishment provisions of Rules 605(b) and (c) governing guilty pleas, mandate strict compliance with Rule 605(a) on the grounds that Rules 605(a), (b), and (c) all require the circuit court to notify a defendant of the necessity of timely filing a written motion, without which defendant is deemed to have waived issues on appeal. *Bagnell*, 348 Ill. App. 3d at 326-27, and *Glenn*, 345 Ill. App. 3d at 984, both citing *People v. Jamison*, 181 Ill. 2d 24 (1998).

However, in *People v. Breedlove*, 213 Ill. 2d 509 (2004), our supreme court distinguished Rule 605(a) from the guilty-plea admonishments of Rules 605(b) and (c).

> "Guilty plea defendants lose their appeal rights completely if they fail to file the proper postplea motion and the reviewing court must dismiss their appeal. [Citation.] In contrast, Rule 605(a) defendants

retain their right to appeal any trial errors (assuming they have filed the necessary posttrial motion) even if they fail to preserve sentencing errors for appeal. In addition, plain error review (134 Ill. 2d R. 615(a)) is available to such defendants." *Breedlove*, 213 Ill. 2d at 520.

We therefore follow those cases where we have required a showing of prejudice before remanding due to noncompliance with Rule 605(a). *People v. Davis*, 356 Ill. App. 3d 725 (2005); *People v. Spivey*, 351 Ill. App. 3d 763, 771 (2004); *People v. Valentin*, 347 Ill. App. 3d 946, 954-55 (2004); *People v. Garner*, 347 Ill. App. 3d 578, 585-86 (2004); *People v. Williams*, 344 Ill. App. 3d 334, 338-40 (2003).

Here, defendant was not admonished, as required by Rule 605(a), that any sentencing issues he failed to raise in a timely postsentencing motion would be deemed waived on appeal or of the need to timely appeal the denial of a postsentencing motion. However, defendant timely filed both a postsentencing motion and a notice of appeal from the denial thereof. "He does not raise any argument that there were specific issues that he was precluded from raising because they were deemed waived by his not having been admonished properly." *Spivey*, 351 Ill. App. 3d at 771. We held in *Spivey*, *Valentin*, and *Garner* that defendants who timely filed postsentencing motions suffered no prejudice from the trial court's failure to inform them that sentencing issues not raised in such a motion are deemed waived on appeal. *Spivey*, 351 Ill. App. 3d at 771; *Valentin*, 347 Ill. App. 3d at 955; *Garner*, 347 Ill. App. 3d at 586. We similarly find that defendant was not prejudiced by the incomplete admonishments here, and a remand for new admonishments is thus unnecessary.

Lastly, defendant contends that compulsory extraction and storage of his DNA, as required by Code section 5—4—3, is unconstitutional because it violates his right to be free from unreasonable searches and seizures. He argues that, pursuant to the "special needs" test, section 5—4—3 is merely an attempt to aid law enforcement and thus lacks the constitutionally requisite "individualized suspicion." In the alternative, defendant asserts that if we employ the "balancing test," we still must find the statute unconstitutional.

■ We review the constitutionality of a statute *de novo*. *People v. Hall*, 352 Ill. App. 3d 537, 545 (2004). Section 5—4—3(a—5) of the Code provides that any person convicted or found guilty of an offense under the Criminal Code of 1961 (720 ILCS 5/1—1 *et seq.* (West 2002)) may be ordered by a court to submit specimens of blood, saliva, or tissue to the Department of State Police for DNA analysis. The purpose of this statute is to create a database of the genetic identities of recidivist criminal offenders. *People v. Garvin*, 349 Ill. App. 3d 845, 853 (2004), *appeal allowed*, 212 Ill. 2d 541 (2004).

In *Garvin*, this court upheld section 5—4—3, noting that all 50 states and the District of Columbia have enacted statutes mandating genetic marker testing and that numerous constitutional challenges from across the nation have been rejected. See *Garvin*, 349 Ill. App. 3d at 853-54 (and the statutes and cases cited therein). Since *Garvin*, we have repeatedly rejected constitutional challenges to section 5—4—3. *People v. Jennings*, 364 Ill. App. 3d 473 (2005); *People v. Redmond*, 357 Ill. App. 3d 256 (2005); *People v. Chamberlain*, 354 Ill. App. 3d 1070, 1075-76 (2005); *People v. Foster*, 354 Ill. App. 3d 564, 570-71 (2004); *People v. Butler*, 354 Ill. App. 3d 57, 62-69 (2004); *People v. Edwards*, 353 Ill. App. 3d 475 (2004); *People v. Ramos*, 353 Ill. App. 3d 133, 141-54 (2004); *People v. Smythe*, 352 Ill. App. 3d 1056, 1061 (2004); *People v. Peppers*, 352 Ill. App. 3d 1002, 1004-08 (2004); *Hall*, 352 Ill. App. 3d at 544-50. Adhering to these holdings, we reject defendant's contentions and find that section 5—4—3 is constitutional.

Accordingly, the judgment of the circuit court is affirmed, except that defendant's conviction and sentence for attempted aggravated robbery are vacated.

Affirmed in part; vacated in part.

CAHILL, P.J., and O'MALLEY, J., concur.