2020 IL App (1st) 192007-U
Order filed: November 25, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-2007

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 2218601 |
| | ) | |
| ANTWAN SPACE, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:    On remand, in sentencing defendant to 30 years' imprisonment, the sentencing court did not abuse its discretion and did not violate section 5-5-4(a) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-5-4 (West 2018)).

¶ 2    A jury convicted defendant, Antwan Space, of felony murder of Mitchell Barrow based on the underlying felony of aggravated battery with a firearm of Virgil Thomas and the trial court sentenced him to 45 years' imprisonment. On appeal, this court reversed defendant's conviction of felony murder, affirmed defendant's conviction for the lesser-included offense of aggravated battery with a firearm, and remanded the matter to the trial court for resentencing on the aggravated battery conviction. On remand, the sentencing court sentenced defendant to 30 years' imprisonment. Defendant now appeals the 30-year sentence, arguing that it was excessive in light

of his rehabilitative potential, or in the alternative, that the sentencing court relied on improper factors in making its decision. Defendant also contends that his sentence must be reduced as it violates section 5-5-4(a) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-5-4 (West 2018)). We affirm.[1]

¶ 3    This court has previously described the underlying facts of this case in *People v. Space*, 2018 IL App (1st) 150922. Therefore, we will set forth only those facts necessary for our review of the resentencing issues.

¶ 4    In August 2002, defendant was arrested in connection with the August 9, 2002 shootings of Barrow and Thomas. Defendant was charged by indictment with 12 counts of first degree murder as to Barrow, as well as two counts of attempt (first degree murder), one count of aggravated battery with a firearm, and one count of aggravated battery as to Thomas. The State proceeded to trial on a single count of first degree murder, which charged that defendant "without lawful justification shot and killed [Barrow] with a firearm during the commission of a forcible felony, to wit: aggravated battery with a firearm." The State *nol-prossed* the remaining counts.

¶ 5    The evidence at trial established that, on August 9, 2002, Barrow, Thomas, Tiffany Allen, Barrow's girlfriend, Debra Alexander, and a woman named Kathy went to a public park on Douglas Boulevard. Defendant, the ex-boyfriend of Allen, approached the group at the park and pulled out a gun and started firing at Barrow. Barrow was struck in his chest and arm. As Thomas assisted Barrow, defendant again fired at Barrow, but shot Thomas. Barrow died as a result of the injuries he suffered from the multiple gunshots. Thomas survived but went to the hospital and was

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

treated for his gunshot wound. Thomas sustained nerve damage in his leg and found it difficult to stand.

¶ 6    The jury convicted defendant of first degree murder while attempting or committing a forcible felony other than second degree murder in violation of section 9-1(a)(3) of the Criminal Code of 1961 (Code) (720 ILCS 5/9-1(a)(3)(West 2002)) (felony murder) and the trial court sentenced him to 45 years' imprisonment. Defendant did not file a direct appeal.

¶ 7    In 2011, defendant filed an amended *pro se* petition seeking relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)), alleging that his trial counsel was ineffective for failing to file a notice of appeal from his conviction. The trial court granted defendant leave to file a late notice of appeal from his conviction for felony murder.

¶ 8    On appeal, this court reversed defendant's conviction for felony murder finding that "the aggravated battery with a firearm [of Thomas] did not have an independent felonious purpose and that the aggravated battery with a firearm of [Thomas] and the murder of [Barrow] did not have the necessary casual relationship," affirmed the finding of guilt as to the lesser-included offense of the aggravated battery with a firearm of Thomas, and remanded for resentencing on that offense. *Space*, 2018 IL App (1st) 150922, ¶ 73.

¶ 9    On remand, the case was assigned to a new judge (sentencing court). The sentencing court requested that the parties obtain certain documentation for sentencing including an updated presentence investigation report (updated PSI), transcripts of the trial, records of defendant's behavior in the Illinois Department of Corrections (IDOC), and any record of classes or steps defendant took to better his education or training while he was incarcerated.

¶ 10    The updated PSI listed defendant's six prior convictions for: possession of a controlled substance in 1995, possession of a controlled substance in 1996, criminal trespass to a vehicle in

1998, unlawful use or possession of a weapon by a felon in 1999, unlawful use or possession of a weapon by a felon in 2000, and possession of a controlled substance in 2001. At the time of the August 9, 2002 shooting at issue in this case, defendant was on parole for the 2001 conviction for possession of a controlled substance.

¶ 11    Defendant's family history was also included in the updated PSI. Defendant reported a good relationship with his mother, stepfather, and six siblings. Defendant had married Lakesha Whitehead, listed as his longtime girlfriend in the original PSI, and has a child with her. Defendant also has three other children with three different women. He tries to maintain contact with these children.

¶ 12    The updated PSI described other relevant background. Defendant dropped out of school in the 11th grade. He joined a street gang, the Traveling Vice Lords, at the age of 14 and terminated his affiliation with the gang 12 years later. He reported that, in November and December 1999, he worked at an M&M factory and, in January and February 2000, he was employed as an assembly worker at a Coca-Cola factory.

¶ 13    Defendant reported that, while in custody, in his free time, he writes music and movie scripts. He has not participated in any community events. According to the updated PSI, defendant "plans to continue his education in the near future."

¶ 14    Defendant's IDOC records revealed that defendant has been at the Menard Correctional Central (Menard) since December 2007. An intake form lists seven aliases for defendant, effective from 1999-2001. While in custody, defendant received five tickets for possession of homemade intoxicants and other contraband, including an "[o]verabundance of juice containers" and other fruit products. In 2011, defendant was ticketed for unauthorized movement and disobeying a direct

order, for "missing his cell door *** when returning from chow," which delayed securing the gallery.

¶ 15    The IDOC records indicate that defendant was approved for a work assignment as a painter and a gallery worker. In July 2016, "Lt Brookman" initiated a request for a lower security clearance for defendant and noted "Good worker – wants him to have a job." On most of the "vote sheets," which were used to determine job assignments, defendant was listed as "currently unassigned," but in October 2013, defendant was listed as a "GED Student."

¶ 16    On September 4, 2019, the sentencing court held a sentencing hearing for defendant's conviction of aggravated battery with a firearm. In aggravation, the State emphasized defendant's prior criminal history. The State then addressed the facts in the current case, noting that defendant fired a loaded gun in a narrow public park where multiple individuals were congregating near tables and benches, which caused or threatened serious harm. Barrow died and Thomas was shot in the leg. The State asked the court to sentence defendant to the maximum of 30 years' for aggravated battery with a firearm, a Class X felony. See 730 ILCS 5/5-4.5-25 (West 2018).

¶ 17    In mitigation, defense counsel argued that defendant's prior convictions were not violent offenses. During the last 17 years, while in custody, defendant has had only minor infractions, and has not had any reports of violence. Defense counsel argued that defendant has had time to reflect and has been rehabilitated and that he wants to get a GED and take college courses in management.

¶ 18    Defense counsel emphasized that defendant has strong ties to his family and to the community. He has four children, with whom he attempts to maintain contact, and has a close relationship with his mother. Counsel presented to the court two letters, one from a pastor who stated that defendant previously worked as a janitor at her church and indicated that she has "a leadership position in mentorship *** awaiting on him upon his release." The other letter was from

a parent resource teacher who noted that defendant, while in elementary school, was a role model and showed dedication for the school and community.

¶ 19    In allocution, defendant apologized for the "problem" he caused the victims' families.

¶ 20    In rendering defendant's sentence, the sentencing court began by summarizing the updated PSI, the IDOC records, and the facts of the case. In summarizing the family background portion of the updated PSI, the court noted, *inter alia*, that defendant "had four children by four different women including one child with his wife." The court also noted that defendant attempts to stay in contact with his children. In summarizing the IDOC records, the court noted, *inter alia*, that "the records also show that defendant had used different names," and listed those names. In summarizing the facts of the case, the sentencing court noted that Allen was not listed as the mother of any of his children.

¶ 21    The sentencing court stated that it considered all the evidence in aggravation including: defendant's criminal history and the fact that he was on parole at the time of the offense; the facts of the case; the significant bodily harm caused to Thomas; and the threat he posed by firing into a crowd of people. The sentencing court also stated that it considered all the evidence in mitigation, including defendant's employment history, family environment, the letters submitted by defense counsel, and that he had used his time in prison to write songs and books.

¶ 22    The sentencing court sentenced defendant to 30 years' imprisonment with credit for the time defendant had served as to this case, 6,323 days or 17 years and 23 days.

¶ 23    Defense counsel made an oral motion to reconsider the sentence; the State did not object. The sentencing court denied the motion. Defendant timely appealed.

¶ 24    On appeal, defendant argues that his 30-year sentence was excessive as it did not reflect his potential for rehabilitation, or in the alternative, that he was denied a fair sentencing hearing as

the sentencing court considered a number of improper factors. Defendant also argues that his sentence violates section 5-5-4(a) of the Code of Corrections. 730 ILCS 5/5-5-4(a).

¶ 25    To begin, we note that, as the State points out, defendant made an oral motion to reconsider sentence and did not file a written motion. Generally, both a contemporaneous verbal objection and a written post-sentencing motion addressing a sentencing issue are required to preserve the issue for review. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, the requirement to file a written motion is waived where the defendant makes an oral motion to reconsider his sentence and the State does not object. *People v. Shields*, 298 Ill. App. 3d 943, 950 (1998) (citing *People v. Enoch*, 122 Ill. 2d 176, 188 (1988)). Here, the State did not object. Therefore, we may address any sentencing issues on appeal based on any ground that appears in the record. *People v. Davis*, 356 Ill. App. 3d 725, 731 (2005) (citing *Shields*, 298 Ill. App. 3d at 950-51).

¶ 26    The sentencing court has broad discretion in imposing an appropriate sentence, and a sentence within the statutory limits will not be disturbed on review absent an abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995). An abuse of discretion exists where a sentence is at great variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 27    Aggravated battery with a firearm is a Class X felony. 720 ILCS 5/12-3.05(h) (West 2018). The sentence for a Class X felony ranges from 6 to 30 years' imprisonment. 730 ILS 5/5/-4.5-25(a) (West 2018). The 30-year sentence falls within this statutory range and we, therefore, presume it is proper. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 12.

¶ 28    Under the Illinois Constitution, penalties are to be imposed both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11. When balancing the retributive and rehabilitative aspects of a sentence, a

court must consider all factors in aggravation and mitigation including, defendant's age, criminal history, character, education, and environment, as well as the nature and circumstances of that crime. *People v. Raymond*, 404 Ill. App 3d 1028, 1069 (2010). The sentencing court is not required to explain the value it assigned to each factor in mitigation and aggravation; rather, it is presumed the sentencing court properly considered the mitigating factors presented and it is the defendant's burden to show otherwise. *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010). Further, a reviewing court "may not substitute its judgment for that of the [sentencing] court simply because it would have weighed those factors differently." *People v. Fern*, 189 Ill. 2d 48, 51 (1999).

¶ 29 The record shows that the sentencing court considered all of the relevant factors in aggravation and mitigation. The sentencing court, in sentencing defendant to 30 years' imprisonment, properly relied on the factors in aggravation argued by the State, specifically, defendant's criminal record, the fact that he was on parole at the time of this offense, that his conduct caused or threatened serious bodily harm to Thomas and that he put multiple people in jeopardy while firing into a crowd of people while at the park. See *People v. Jones*, 2019 IL App (1st) 170478, ¶ 55 (the sentencing court was not required to give a greater weight to mitigating factors than to the severity of the offense).

¶ 30 Nonetheless, defendant argues that we should vacate and remand for resentencing because the sentencing court failed to adequately consider his rehabilitative efforts, specifically, that he worked as a janitor while in prison, and that he wrote a self-help book and sought to have a manuscript published. Defendant also contends that the court failed to take into account his strong family network and his community ties as evidenced by the letters from his pastor and teacher and instead placed improper weight on the minor infractions he incurred while in prison. We disagree.

¶ 31     The record belies defendant's argument. The evidence of defendant's rehabilitative efforts and potential were presented to the court in the updated PSI and the IDOC records and argued by defense counsel at sentencing. A sentencing court is presumed to have considered all mitigating evidence presented including those factors mentioned in the PSI report. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 20. Further, contrary to defendant's argument, the court specifically noted that it had read the letters, which were offered in mitigation, and considered that defendant was writing books and songs while in prison, that he had close family ties, that he had qualified for job assignments while incarcerated, and that his custodial infractions were only minor ones.

¶ 32     Defendant contends that the court failed to give proper consideration that he was a GED student. However, despite the sentencing court's specific requests, defendant presented no evidence as to his efforts to better his education at the sentencing hearing. Therefore, the sentencing court correctly noted that defendant had not shown that he was taking classes or that he had obtained his GED.

¶ 33     Defendant next contends that the sentencing court considered several improper factors in aggravation. First, defendant argues that the court improperly considered that he had fathered children with multiple women in that his procreation decisions are constitutionally protected under *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 112 S. Ct. 2791, 2807 (1992) ("Our law affords constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education."). Defendant also contends that the court erred in considering unreliable evidence, a prison intake form showing that from 1999-2001 he had used seven different aliases.

¶ 34     When making a determination as to whether improper factors were considered during sentencing, we consider the entire record as opposed to a few words or statements made by the

sentencing court. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47. Review of the entire record here shows that the sentencing court before issuing its decision alluded to defendant's children in passing when summarizing the family background section of defendant's updated PSI. And that the court briefly alluded to defendant's having "used different names" when describing defendant's IDOC records. There is no indication in the record that the court relied or focused on this information when determining defendant's sentence.

¶ 35 We find that the sentencing court properly considered the elements in aggravation and mitigation when imposing defendant's sentence and therefore deny defendant's request to vacate his sentence and remand for a new sentencing hearing.

¶ 36 Defendant next argues that we should reduce his 30-year sentence because it violates section 5-5-4(a) of the Code of Corrections, which provides:

> "Where a conviction or sentence has been set aside on direct review or on collateral attack, the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence less the portion of the prior sentence previously satisfied unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing." 730 ILCS 5/5-5-4(a).

¶ 37 Defendant's prior sentence for felony murder, which was set aside on direct review, was 45 years' imprisonment. Of that term, 17 years and 23 days were "previously satisfied" by his incarceration and by his credit for time spent in presentence custody. Defendant argues that under section 5-5-4(a), he could only be resentenced to a maximum of 27 years and 342 days in prison (which is the difference between the previous sentence of 45 years' imprisonment and the 17 years and 23 days which had been satisfied), unless the more severe sentence was based on his conduct

occurring after the original sentencing. The sentencing court here gave no indication that the minor infractions defendant committed while in prison justified a more severe sentence. Accordingly, defendant asks us to reduce his sentence for aggravated battery to 27 years and 342 days pursuant to our authority under Illinois Supreme Court Rule 615(b).

¶ 38    The State responds that under section 5-5-4(a), when resentencing defendant, a sentencing court must ensure that the new sentence is not greater than the sentence originally imposed. Then, after imposing the new sentence, the sentencing court must give defendant credit for the portion of the prior sentence previously satisfied (*i.e.*, for time served). The State argues that the sentencing court's 30-year sentence for aggravated battery does not run afoul of the statute, as it is less than the 45-year sentence originally imposed on him, and because the court credited defendant for his time served.

¶ 39    As the parties' arguments are based on their differing constructions of section 5-5-4(a), resolution of this issue requires us to construe this provision. The primary objective of statutory construction is to ascertain the intent of the legislature, the most reliable indicator of which is the statutory language, given its plain and ordinary meaning. *People v. Casler*, 2020 IL 125117, ¶ 24. When, a statute is ambiguous, we may look beyond its express language and rely on extrinsic aids such as legislative history or rules of statutory construction. *Barrall v. Board of Trustees of John A. Logan Community College*, 2019 IL App (5th) 180284, ¶ 10.

¶ 40    In *People v. Adams*, 169 Ill. App. 3d 312 (1988), we examined the legislative history of section 5-5-4(a). We noted that the Council Commentary (Ill.Ann.Stat., ch. 38, par. 1005-5-4, Council Commentary, at 450 (Smith-Hurd 1982)) indicates that section 5-5-4(a) sets out the rule adopted by the United States Supreme Court in *North Carolina v. Pearce*, 89 S. Ct. 2072 (1969) and followed by the Illinois Supreme Court in *People v. Baze*, 43 Ill. 2d 298 (1969). *Adams*, 169

Ill. App. 3d at 314. In *Pearce*, the United States Supreme Court held that the due process clause requires that a defendant be protected from a court's possible vindictiveness after a successful attack on a prior conviction for the same offense. 89 S. Ct. at 2080 (1969). The specific holding was:

> "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.*

¶ 41 The Illinois Supreme Court followed *Pearce* in *Baze*. In *Adams*, we noted that "[t]he Illinois legislature in the Unified Code of Corrections sought to embody the *Pearce* and *Baze* decisions when it enacted section 5-5-4." *Adams*, 169 Ill. App. 3d at 316.

¶ 42 Given this legislative history of section 5-5-4(a), we construe the legislative intent behind it as preventing a sentencing court from vindictively punishing a defendant for having successfully attacked a first conviction. To prevent such vindictiveness, which would unconstitutionally deter a defendant from exercising his right to appeal, the legislature set forth two protections for a defendant: (1) the court may not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence; and (2) after imposing the new sentence, the court must credit defendant for the portion of the prior sentence previously satisfied.

¶ 43 We conclude that the sentencing court here comported with both the intent and the clear language of section 5-5-4(a), as the 30-year sentence it imposed on defendant for aggravated

battery was less than the 45-year sentence originally imposed on him for felony murder, and as the court then credited defendant for the 17 years and 23 days that he previously satisfied by his incarceration.

¶ 44     Affirmed.