FIFTH DIVISION

MARCH 31, 2004

No. 1-02-3079

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court

Plaintiff-Appellee, ) of Cook County.

)

v. )

) Honorable

EDWIN VALENTIN, ) Kenneth J. Wadas,

) Judge Presiding.

Defendant-Appellant. )

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court: 

Following a bench trial, defendant, Edwin Valentin was convicted of the first degree murder of Irene Figueroa and of the attempted first degree murder of Gustavo Coronel, and was sentenced to concurrent terms of 45 and 30 years' imprisonment.  On appeal, defendant contends that:  (1) the State failed to prove him guilty of attempted first degree murder beyond a reasonable doubt; (2) his sentences are excessive; and (3) the trial court improperly admonished him regarding his opportunity to file a motion to reconsider his sentences pursuant to Supreme Court Rule 605. (Official Reports Advance Sheet No. 21 (October 17, 2001) R. 605, eff. October 1, 2001).  For the following reasons, we affirm defendant's conviction, vacate his sentences, and remand this case to the trial court to resentence defendant consistent with this opinion. 

BACKGROUND

The following facts are relevant to this appeal. On November 28, 2000, Irene Figueroa and Gustavo Coronel were driving in Coronel's car when they were repeatedly hit by a car being driven by defendant.  As a result, Coronel lost control of his car and was hit by an oncoming car. Figueroa was killed and Coronel was injured.  Defendant was arrested and charged with the murder of Figueroa and the attempted murder of Coronel.

At trial, Jeannie Colon, Figueroa's sister, testified that in November 2000, she was staying at Figueroa's house, located at 3750 West Armitage, Chicago.  Prior to November 25, 2000, defendant had lived with Figueroa in the house. After defendant moved out, Figueroa had the locks changed.  Figueroa was not dating Coronel at the time of her death.

On the afternoon of November 25, 2000, defendant visited Figueroa's house.  Colon answered the door and defendant demanded to see Figueroa.  Colon told defendant that Figueroa was not home, but let defendant into the house.  Colon stated that defendant began to wave his hands and make "mean" faces.  In a raised voice, defendant told Colon that he if he saw Figueroa with "another nigger" he would kill her. Shortly thereafter, defendant left.

On November 28, 2000, defendant returned to Figueroa's house at approximately 3:30 p.m.  Colon again answered the door, and defendant entered the house and asked whether Figueroa was at home.  Defendant then went upstairs to get some of his belongings and during that time Figueroa returned home with Coronel.  Colon told Figueroa and Coronel that defendant was upstairs and that they should leave, and they did so.  That was the last time Colon saw her sister alive.  Defendant left the house soon afterwards.

  Coronel testified that he had dated Figueroa on and off for seven years.  On November 28, 2000, after speaking with Colon, Coronel and Figueroa left her home immediately, walked to his parked car, a 1987 Honda Accord, and, after driving a short distance north on Avers Avenue, noticed a small, dark, two-door car in front of them pull over.  Coronel drove past the other car.  In doing so, Coronel noticed that defendant was the driver of the car and that there was a girl in the passenger seat.  Coronel identified defendant in open court. 

Coronel testified that defendant drove up behind him and began to hit the rear of Coronel's car with his car.  Defendant hit the rear of Coronel's car approximately four to six times in three blocks on Avers as Coronel approached Fullerton Avenue.  Each time defendant hit Coronel's car, Coronel's car bounced back.  Defendant appeared to speed up as he hit Coronel's car over and over.  During this time, Figueroa was shaking and her eyes were wide open.  Coronel turned the car from Avers onto Fullerton Avenue and defendant continued to follow behind them, ramming into Coronel's car another four times.

Finally, defendant hit Coronel's car with such force that the car began to spin and Coronel lost control of the car.  Defendant then rammed Coronel's car into oncoming traffic, causing the passenger side of Coronel's car, where Figueroa was seated, to be exposed to oncoming cars.  Another car collided with Coronel's car, hitting the passenger side door.  Coronel's car came to a complete stop, at which time Coronel felt some pain and dizziness.  When he looked back at Figueroa, she was unconscious and there was broken glass on her neck and clothes.  Coronel screamed to several people on the street to call an ambulance, at which point Coronel saw defendant get out of his car and run toward Coronel's car.  Defendant tried to pull Figueroa out of the car and Coronel yelled at him, "You killed her, you killed her."  Defendant responded, "She ain't dead, she ain't dead," and then ran back to his car and left the scene.  Upon arrival of the ambulance, paramedics removed Figueroa from Coronel's car and transported her to Illinois Masonic Hospital, where she was pronounced dead.  Coronel later identified defendant from a police lineup.

John Fischer testified on behalf of the State that he was at Tony's Finer Foods on North Central Park Avenue and Fullerton when he heard a loud crash, which sounded like a car accident.  Fischer saw two vehicles sliding across Fullerton and noticed that one vehicle was totally smashed in on the passenger side.  Fischer saw Coronel get out of the damaged vehicle and then heard defendant say to Coronel, "I told you not to fuck with me."  Defendant then walked over to Coronel's car and unsuccessfully attempted to remove Figueroa from the car.  Defendant then returned to his car and drove away.  Fischer also identified defendant in a police lineup.

The parties stipulated to the following testimony:  Chicago police officer Glines would have testified that he was assigned to investigate a homicide on November 28, 2000, and arrived at the scene, 3635 West Fullerton Avenue, at approximately 4 p.m.  Chicago police officer Gerome Bugucki, who interviewed Coronel at the scene, would have testified that  Coronel reported that he was traveling eastbound on Fullerton and that defendant last rammed into his car just west of North Monticello Street.  Finally, Dr. Thamrong Chira, a forensic pathologist with the office of the medical examiner for Cook County, would have testified that the autopsy he conducted on Figueroa revealed that her death was a result of both external and internal injuries.  Dr. Chira ruled the death a homicide.  

Anita Roman testified on defendant's behalf that she was with defendant on November 28, 2000, and that they have a child together.  Roman testified that when defendant pulled his car over on Avers, another car hit defendant's car on the front left side fender.  Defendant then followed that car and tapped it one time.  Roman stated that the other car made a left turn, and a third car struck that car on its passenger side.  Roman stated that she saw the accident from a distance away and claimed that she did not know the driver of the car that hit defendant's car, the same driver who later got into the accident on Fullerton.

On cross-examination, the State impeached Roman with her prior testimony given at the grand jury on December 15, 2000.  Roman testified at the grand jury that defendant told her that Coronel and Figueroa were in the other car.  Roman further stated at the grand jury that defendant hit Coronel's car hard the first time, but did not hit the car hard on the second and third times.  Roman also admitted that the force of the impact pushed her out of her seat.

The parties stipulated to the testimony of Assistant State's Attorney Anne Marie Allen, who would have testified that the grand jury transcript of Roman's testimony was a true and accurate record of the questions Roman was asked and the answers she gave.

The trial court found defendant guilty on all counts.  The trial court noted that defendant's flight after the occurrence was circumstantial evidence of his guilt and that Roman's grand jury testimony was more credible than her trial testimony.  The trial court denied defendant's motion for a new trial and, after a hearing, sentenced defendant to a 30 years' imprisonment for the attempted murder and a concurrent term of 45 years' imprisonment for murder.

Defendant's timely appeal followed.

OPINION

Initially, defendant contends that the State failed to prove him guilty of the attempted murder of Coronel beyond a reasonable doubt.  Defendant argues that the evidence failed to show that defendant had the specific intent to kill Coronel when he rear-ended Coronel's vehicle with his own vehicle.

The standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Cooper
, 194 Ill. 2d 419, 430-31, 743 N.E.2d 32 (2000).  The determination of the credibility of the witnesses, the weight given their testimony, and the inferences drawn therefrom are exclusively within the province of the trier of fact, and a reviewing court will not overturn the trial court's determination merely because the reviewing court would have decided the case differently.  
People v. Holmes
, 198 
 
Ill. App. 3d 766, 777, 556 N.E.2d 539 (1989).  This court will not reverse a conviction unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt.  
People v. Williams
, 165 Ill. 2d 51, 54-55, 649 N.E.2d 397 (1995).   

The offense of attempted murder is shown when the State proves, beyond a reasonable doubt, that the defendant, with the specific intent to kill, commits 
any act
 which constitutes a substantial step toward the commission of murder.  720 ILCS 5/8-4 (West 2000);  
People v. Hill
, 276 
 
Ill. App. 3d 683, 658 N.E. 2d 1294 (1995).  The question of a defendant's intent is one of fact to be determined by the trier of fact (
Hill
, 276 
 
Ill. App. 3d at 687), and can be inferred from the surrounding circumstances such as the character of the attack, use of a deadly weapon, and severity of injury.  
Williams
, 165 Ill. 2d at 64.  Intent can also be inferred from an act, "the direct and natural tendency of which is to destroy another's life."  
Hill
, 276 
 
Ill. App. 3d at 688.  For example, a deadly weapon is not necessarily one manufactured for the special purpose of taking a life - a deadly weapon is defined as any instrument that is used or may be used for the purpose of an offense and that is capable of producing death.  
In re T.G
., 285 
 
Ill. App. 3d 838, 845, 674 N.E. 2d 919 (1996).

Defendant argues that the intent to kill Coronal cannot be proven or inferred from his threat directed at Figueroa three days prior to her death, his actions of repeatedly bashing into Coronel's vehicle with his own vehicle,  or from his statement after the incident:  "I told you not to fuck with me."  Defendant argues that his threat was too "remote" to constitute intent, that he was driving a "small" car and could not have intended murder based on his actions, and that his final words were merely those of the "scorned lover," illustrating "the macho bravado of the ex-boyfriend."  Defendant does not define the terms "macho bravado," nor does he provide a sufficient distinction of the actions of "macho bravado," from those actions that constitute attempted murder.

 The facts here show that defendant used his automobile as a weapon with the requisite intent to kill the occupants of Coronel's car.  Defendant rammed his car into Coronel's car repeatedly, ultimately pushing the car into oncoming traffic and causing the death of Figueroa.  Defendant's actions, along with his threatening remarks days prior to the incident, and his comment made following the fatal crash fulfill the element of intent required in a conviction for attempted murder.  

This matter is distinguishable from the case of 
People v. Jones
, 184 
 
Ill. App. 3d 412, 541 N.E.2d 132 (1989), upon which defendant relies.  There, the defendant broke into the victims' home burglarized the home and brutalized the three occupants.  On appeal, this court affirmed the defendant's conviction for attempted murder of the wife, whom the defendant raped and beat with a gun, but reversed the conviction for attempted murder of the husband.  The court explained that in light of the availability of deadlier means, hitting the husband in the head several times with the gun and repeatedly kicking him in the head was not a severe enough assault to produce death, where the defendant and codefendants could have easily committed murder once gaining control of the home.  
Jones
, 184 
 
Ill. App. 3d at 430.  

By contrast, in the present case, defendant had no control over which rider in Coronel's car would die as a result of his actions of ramming the car into oncoming traffic.  There is nothing in the facts to suggest that defendant, by his actions, intended to kill Figueroa but not Coronel.

Defendant further contends that the trial court applied the incorrect standard of law in convicting him of attempted murder based on a finding that defendant "knew his actions created a strong probability of causing great bodily harm or death."  Defendant argues that this is not the standard for attempted murder, as it does not contain the specific intent to kill, and therefore his conviction should be reversed and the matter remanded for a new trial.

Defendant has waived the issue for review for failure to both raise it at the time of the trial court's final ruling and to include the issue in his posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1998).  This issue is not reviewable as plain error, as the evidence is not closely balanced and defendant received a fair trial.  
People v. Carlson
, 79 Ill. 2d 564, 576, 404 N.E.2d 233 (1980).

Notwithstanding defendant's waiver, the record shows that the trial court did, in fact,  find defendant possessed the intent to kill:

"Did he specifically intend to kill, he specifically intended to do great bodily harm at least to one or both of these individuals,  I in fact think 
he specifically intended to kill them both 
or to do great bodily harm resulting in death, and that was the ultimate result." (Emphasis added).

The specific intent to kill Coronel can be substantiated through the doctrine of "transferred intent," which applies when a third person is injured as a result of a defendant's assault upon another person.  
People v. Burrage
, 269 
 
Ill. App. 3d 67, 76, 645 N.E.2d 455 (1994).  In 
Burrage
, the evidence revealed that the defendant had the intent to kill an individual named Andre, but actually shot and killed a three-year-old child.  The court found that the defendant's intent to kill transferred to the child.  
Burrage
, 269 
 
Ill. App. 3d at 76.

The doctrine also applies to attempted murder cases, where the third-party victim is not killed.  
People v. Ephraim
, 323 
 
Ill. App. 3d 1097, 1108-09, 753 N.E.2d 486 (2001).  In 
Ephraim
, this court held that when the evidence showed that the defendant intended to kill the driver of a specific automobile, and young child victims were injured, rather than killed, the doctrine applied.  
Ephraim
, 323 
 
Ill. App. 3d at 1109.

Here, the evidence shows that defendant intended to kill Figueroa and that there was no distinction between his actions in furtherance of that intention toward Figueroa and those directed at Coronel as they were occupants of the same vehicle that defendant rammed into oncoming traffic. Defendant's conviction for the attempted murder of Coronel is proper.

Next, defendant originally argued that his concurrent sentences of 45 years' imprisonment for murder and 30 years' imprisonment for attempted murder were excessive where he was 20 years old at the time of the offenses and had no prior convictions for violent crimes.  Defendant argued that the trial court failed to take into account his rehabilitative potential in sentencing.

The offense of first-degree murder is punishable by a sentence of 20 to 60 years imprisonment.  730 ILCS 5/5-8-1(a)(1)(a) (West 2000).  Attempted first degree murder is a Class X felony, punishable by a sentence of 6 to 30 years imprisonment.  730 ILCS 5/5-8-1(a)(3) (West 2000).  Both of defendant's sentences fall well within the statutory range of the offenses for which he was convicted.

In between the time of the filing of defendant's appeal and the oral argument of this matter, however, our supreme court handed down the opinion of 
People v. Phelps
, No. 93830 (January 23, 2004), which affirmed mandatory consecutive sentences under section 5-8-4(a) of the Unified Code of Corrections for a defendant convicted of aggravated kidnaping and heinous battery, both Class X felonies.  Under section 5-8-4(a)(i), consecutive sentencing is mandated where "one of the offenses for which defendant was convicted was * * *  a Class X or Class 1 felony and the defendant inflicted severe bodily injury." 730 ILCS 5/5-8-4(a) (West 2000).  "
[A]ny
 Class X or Class 1 felony that results in severe bodily injury being inflicted on the victim of that felony triggers consecutive sentences." (Emphasis in original.)  
Phelps
, slip op. at 10, quoting 
People v. Whitney
, 188 Ill. 2d 91, 99 (1999).

Based on the above, the State argued, and defendant concedes, that his concurrent sentences are improper under the law.  We therefore vacate defendant's sentence and remand this matter to the trial court to resentence defendant consecutively in accordance with 
Phelps
 and section 5-8-4(a) of the Unified Code of Corrections. 

Finally, defendant contends that after imposing his sentence, the trial court failed to tell defendant that he must include in his motion to reconsider sentence all issues and claims of error relative to his sentence, as required by Supreme Court Rule 605(a)(3), and that he is therefore entitled to file a new motion to reconsider his sentence.  The State responds that defendant was substantially admonished pursuant to Rule 605(a)(3).

Rule 605 is entitled "Advice to Defendant," and in section (a), "On Judgment and Sentence After Plea of Not Guilty," subsection (3) provides that at the time of imposing sentence, the trial court will advise the defendant as follows:

"A.  that the right to appeal the judgment of conviction, excluding the sentence imposed or modified, will be preserved only if a notice of appeal is filed in the trial court within thirty (30) days from the date on which sentence is imposed;

B. that prior to taking an appeal, if the defendant seeks to challenge the correctness of the sentence, or any aspect of the sentencing hearing, the defendant must file in the trial court within 30 days of the date on which sentence is imposed a written motion asking to have the trial court reconsider the sentence imposed, or consider any challenges to the sentencing hearing, setting forth in the motion all issues or claims of error regarding the sentence imposed or the sentencing hearing;

 C.  
that any issue or claim of error regarding the sentence imposed or any aspect of the sentencing hearing not raised in the written motion shall be deemed waived
; and

D.  that in order to preserve the right to appeal following the disposition of the motion to reconsider sentence, or any challenges regarding the sentencing hearing, the defendant must file a notice of appeal
 
in the trial court within 30 days from the entry of the order disposing of the defendant's motion to reconsider sentence or order disposing of any challenges to the sentencing hearing. (Emphasis added) Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a)93), eff. October 1, 2001.

The purpose of the Rule 605 admonishment is to ensure that a defendant is aware of the requirements of Supreme Court Rule 604(d), which set forth the deadlines and requirement for appeals form sentences imposed upon a plea of guilty. Official Reports Advance Sheet No. 21 (October 17, 2001) R. 605(d), eff. October 1, 2001.  The trial court need not strictly comply with the admonishment requirements of Rule 605 as the rule requires only substantial compliance.  
People v. Robinson
, 83 Ill. 2d 424, 428, 415 N.E.2d 1045 (1980).  Substantial compliance is found insufficient if the trial court omits information or provides the defendant with additional misinformation which leads the defendant not to follow the proper procedure in seeking review from the court's finding.  
People v. Bates
, 323 
 
Ill. App. 3d 77, 80-81, 84-85, 751 N.E.2d 180 (2001).  

Here, the record shows that the trial court informed defendant of all of the procedural steps necessary to follow in order to perfect an appeal, but failed to inform defendant about waiving issues relevant to sentencing if he did not include them in his motion. The record shows that defendant timely filed his motion to reduce his sentence.  Defendant fails to identify any specific issue that was deemed waived by his not having been admonished that he needed to include all issues in his motion regarding sentencing or have them waived.  It is not apparent that defendant suffered any prejudice as a result of the trial court's omission.  Defendant was substantially admonished in accordance with Rule 605.

For the reasons stated above, we therefore affirm defendant's conviction and remand this matter to the trial court for the imposition of consecutive sentences.

Affirmed; remanded for sentencing, with instructions.

O'BRIEN and HARTIGAN, JJ., concur.