2022 IL App (1st) 200741-U

No. 1-20-0741

Second Division
July 12, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| THE PEOPLE OF THE STATE OF | ) | Circuit Court of |
| ILLINOIS, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 15 CR 10957 |
| v. | ) | |
| | ) | |
| JAYNI FOWLER, | ) | Honorable |
| | ) | Michael Joseph Kane, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's dismissal of defendant's initial *pro se* postconviction petition is affirmed where his claim that the proportionate penalties clause impacted his sentence as a youthful offender is forfeited and he has not set forth the gist of a claim of ineffective assistance of plea counsel.

¶ 2    In 2016, defendant-appellant Jayni Fowler pled guilty to attempted murder and was sentenced to 34 years' imprisonment. Defendant did not move to withdraw his guilty plea or pursue a direct appeal. On December 17, 2019, defendant filed a *pro se* postconviction petition pursuant

to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), which the circuit court summarily dismissed. On appeal, defendant argues that the circuit court erred in dismissing his petition because he stated the gist of a claim that his plea was invalid based on plea counsel's erroneous advice on the possible sentencing range and the proportionate penalties clause impacted his sentencing as a youthful offender. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     In July 2015, defendant was indicted on 24 counts in connection with a shooting that occurred on May 20, 2015, when defendant was 18 years old. The charges alleged that defendant fired a handgun toward a group of five children, aged 11 to 14 years old, injuring one of them. The indictment included four counts of attempted murder against the injured victim (720 ILCS 5/8-4(a), 5/9-1(a)(1) (West 2014)) and eight counts of attempted murder related to the four uninjured victims (720 ILCS 5/8-4(a), 5/9-1(a)(1) (West 2014)). Additionally, there were seven counts of aggravated battery involving a child under 13 years old (720 ILCS 5/12-3.05 (West 2014)) and five counts of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a) (West 2014)).

¶ 5     On December 29, 2016, defendant entered into a negotiated guilty plea. We set forth the plea discussions before the circuit court to the extent relevant to the issues on appeal.

¶ 6     Before the court, the State recited the plea offer as follows:

          "Judge, the agreement is for 34 years on Count 1. The sentence is delineated with nine years on the substantive attempt first-degree murder, 6 to 30 with an additional 25 for the firearm enhancement. That's the minimum on the firearm enhancement. It will be stipulated that great bodily harm was produced by the defendant when he personally discharged a firearm. *** That's at 85 percent. That sentencing enhancement alone carries a 25 to life. The State has agreed to *nolle* what would be additional consecutive counts as

well as not proceed—or not to ask for an extended term sentence, which would apply. The victim in this matter *** was under 12 at the time."

The circuit court then repeated the terms of the plea offer as follows:

"So the agreement is in exchange for a plea of guilty on Count 1, the remaining counts will be dismissed. On Count 1, Class X attempt first-degree murder, the defendant will be sentenced to nine years [in the] Illinois Department of Corrections, plus additional 25 years Illinois Department of Corrections add-on sentence based on the fact that the defendant personally discharged the firearm that caused the injuries to the victim[.]"

The State and the circuit court also stated on the record that defendant was informed that he was eligible for an extended term based on the age of the injured victim. The circuit court informed defendant of the penalties for the charges:

"This attempt first-degree murder is a Class X. Range of sentence on a Class X is 6 to 30 years in the Illinois Department of Corrections. You're eligible for an extended term. It would be 30 to 60 years in the Illinois Department of Corrections, a fine up to $25,000 and because it's Class X, it would be additional three years mandatory supervised release. Addition—you're also facing additional mandatory add-on penalties because you discharged a firearm—you personally discharged a firearm which caused the great bodily harm to the victim and that range of sentencing is from 25-years to natural life."

Defendant confirmed that he understood the possible penalties.

¶ 7    The State then presented the following factual basis for the plea:

"[O]n May 20th, 2015 shortly before 3:30 p.m. in the afternoon near the location of 10932 South Loomis, that the defendant and another shot into a group of people. One of

those gunshots struck [the injured victim] who was under 12 at the time; and as a result, suffered the gunshot wounds that would be stipulated the great bodily harm in this matter.

Judge, Chicago Police responded to a man with a gun and shots fired. They chased the defendant from the scene and the defendant was taken into custody. The defendant was taken to the police headquarters where the defendant did admit that he did shoot into the crowd. Recovered from the scene were six shell casings which matched the number of reports heard by other witnesses.

Judge, we believe that shooting six times into this group of people was a substantial step towards the commission of first-degree murder of [the injured victim] who was one of the individuals in the group. The State has forsaken as a result of a plea on Count 1 to go forward on what would have been mandatory consecutive sentences as to the other victims."

As to the injured victim, the State stated that he was shot by the defendant, which caused him great bodily harm, and he went to Comer Children's Hospital "as a result of the gunshot wounds that he suffered at the hands of the defendant."

¶ 8    In accordance with the plea agreement, defendant pled guilty to one count of first-degree attempted murder against the injured victim, and the circuit court sentenced him to 34 years' imprisonment. Defendant did not move to withdraw his guilty plea, nor did he file a direct appeal after entering his plea.

¶ 9    Almost three years later, on December 17, 2019, defendant filed a *pro se* postconviction petition under the Act. Under "Issue One," defendant asserted that his sentence violated the proportionate penalties clause of the Illinois Constitution "where offense[s] with identical elements

are given [a] different sentence." He stated that there was no "intent to kill" and that it was not clear from the record whether the victim suffered "a great bodily injury."

¶ 10    Under "Issue Two," defendant asserted that his 34-year sentence is unconstitutional under both the proportionate penalties clause and "House Bill, Public act 100-1182, as applied to petitioner." Specifically, he alleged that he was 18 years old at the time of the offense and he will be 48 years old when he is eligible for parole and 52 years old when he has served the entirety of his sentence. He argued that his sentence is disproportionate because the victim was shot in the shoulder and because there was no evidence that the victim suffered "great bodily harm."

¶ 11    Under "Issue Three," defendant alleged that he was denied the effective assistance of plea counsel because counsel failed to recommend and request a Rule 402 conference prior to the plea. Additionally, according to defendant,

> "[t]rial counsel did not tell petitioner the minimum sentence for his offense of first-degree attempt murder. Trial counsel told petitioner that he had to either plead guilty to thirty-four years in [prison] or go to trial. *** Trial counsel did not submit in [*sic*] a 402 conference to the court and did not let petitioner know anything about a 402 conference. The trial court did not issue a presentence investigation on petitioner's behalf. Petitioner was only 18 years old at the time of offense was *** illiterate and rel[ied] on counsel legal advice."

Defendant further claimed that his plea was unknowingly entered because he did not "fully know the nature of the charge, the potential sentencing range, the right to not plead guilty and the right to have a trial by jury[,]" and that the trial court did not have jurisdiction to sentence him without a presentence investigation (PSI) report and his waiver of the report was not valid.

¶ 12     Attached to the petition was defendant's own affidavit. Therein, he averred that his attorney did not request a Rule 402 conference and informed him that if he did not take the plea deal, he would be forced to go to trial and would face more time. Defendant also averred that he did not waive his right to a PSI report and if one had been prepared, "it is a strong probability" that he would have received a lesser sentence.

¶ 13     On March 13, 2020, the circuit court issued an order summarily dismissing the petition as frivolous and patently without merit. Relevant here, the court characterized defendant's claims as follows: defendant's sentence violated the Illinois Constitution, defendant's plea counsel was ineffective, and defendant did not effectively waive his right to a PSI report. The court stated that the claims in defendant's petition were forfeited by virtue of his voluntary plea. Finally, the circuit court found that, even if the claims had not been forfeited, they would "fail on post-conviction review" because the claims "failed to meet the appropriate standards."

¶ 14     This appeal followed.[1]

¶ 15                                II. ANALYSIS

¶ 16     On appeal, defendant requests that this court reverse the circuit court's dismissal of his petition and remand for second stage proceedings under the Act. To that end, defendant argues he received ineffective assistance of plea counsel as his attorney misadvised him on the sentencing range and that his plea was invalid as the proportionate penalties clause would have impacted his sentencing as a youthful offender.

---

[1] Defendant's notice of appeal was filed on May 15, 2020. However, included with his notice was proof of service in accordance with Illinois Supreme Court Rule 12(b)(6) (eff. July 1, 2017), indicating that defendant placed his notice of appeal in the institutional mail on May 5, 2020. In light of our supreme court's mandate addressing the COVID-19 emergency, which extended the timing for filing a notice of appeal from 30 days to 60 days, we find defendant's notice of appeal to be timely filed. M.R. 30370.

¶ 17    The State, in response, advances several arguments to support affirmance of the circuit court's dismissal. First, the State contends that, even liberally construed, defendant's appellate claims were not included in his *pro se* postconviction petition and are therefore forfeited. Second, the State argues that even if the claims were not forfeited, they are barred (1) because defendant's plea waived all nonjurisdictional errors, (2) due to application of non-retroactivity principles, and (3) due to application of United States Supreme Court precedent. Lastly, the State argues that defendant simply has not set forth an arguable claim that his plea counsel was ineffective.

¶ 18                              A. The Act

¶ 19    The Act provides a method for a criminal defendant to collaterally attack a conviction by asserting that it resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A postconviction proceeding in a noncapital case has three stages. *Hodges*, 234 Ill. 2d at 10. At the first stage, a petition need only state the "gist" of a constitutional claim (*id.* at 9 (citing *People v. Porter*, 122 Ill. 2d 64, 73 (1988)), and a trial court may summarily dismiss a petition within 90 days if it "determines the petition is frivolous or is patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2018)).

¶ 20    A petition is frivolous or patently without merit when it "has no arguable basis in either fact or law," such as where it is "based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 11-12, 16. Additionally, a defendant's claim is considered frivolous or patently without merit if it is procedurally barred under either the doctrine of *res judicata* or forfeiture. *People v. Blair*, 215 Ill. 2d 427, 445 (2005). In particular, any issues that could have been raised on direct appeal, but were not, are procedurally barred. *People v. Ruiz*, 132 Ill. 2d 1, 9 (1989). However, the doctrines of *res judicata* and forfeiture are relaxed in three specific situations: (1) where fundamental fairness requires, (2) where the alleged forfeiture stems

from the incompetence of appellate counsel, or (3) where the facts relating to the claim do not appear on the face of the original appellate record. *People v. Harris*, 206 Ill. 2d 1, 13 (2002).

¶ 21 Although a defendant's petition is to be liberally construed and need only present a limited amount of detail, that "does not mean that a *pro se* [defendant] is excused from providing any factual detail at all surrounding the alleged constitutional deprivation." *People v. Delton*, 227 Ill. 2d 247, 254 (2008). We review *de novo* the summary dismissal of a defendant's postconviction petition. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 22                                    B. Forfeiture

¶ 23 Before proceeding to the merits of defendant's claims, we must address the State's contention that defendant's claims are forfeited. The State argues that because, among other reasons, defendant's claims here on appeal were not included in his *pro se* postconviction petition they cannot be addressed by this court on appeal. The State claims that defendant's appeal "lacks any relationship [to] those claims he raised in his postconviction petition." In particular, the State asserts that defendant's petition did not claim that his plea was invalid based on his youth or that his status as a youthful offender implicated constitutional concerns related to the eighth amendment and proportionate penalties clause jurisprudence, or that he was misadvised concerning the same. As authority, the State cites to *People v. Reed*, 2014 IL App (1st) 122610; *People v. Mars*, 2012 IL App (2d) 110695; and *People v. Jones*, 213 Ill. 2d 498 (2004).

¶ 24 In his reply brief, defendant argues that the State's reading of the petition is unduly narrow and overlooks certain parts of his petition. Specifically, defendant claims that his petition does, in fact, assert that plea counsel was ineffective for giving erroneous advice and also references the due process requirement that his guilty plea be knowing and voluntary. Further, defendant claims that his affidavit alleges "that his personal background and lack of criminal history would have

resulted in a lesser sentence." Defendant cites *People v. Thomas*, 2014 IL App (2d) 121001, for support.

¶ 25    Section 122-3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or amended petition is waived." 725 ILCS 5/122-3 (West 2018). It is well established that "any issues to be reviewed must be presented in the petition filed in the circuit court." *People v. Jones*, 211 Ill. 2d 140, 148 (2004); see also *People v. Dorsey*, 2021 IL 123010, ¶ 70 (proportionate penalties clause claim not included in the motion for leave to file a successive postconviction petition or in the petition itself was forfeited).

¶ 26    However, a *pro se* postconviction petitioner is not required to allege facts supporting every element of a constitutional claim. *Mars*, 2012 IL App (2d) 110695, ¶ 32. Instead, a *pro se* petition must be viewed with a lenient eye and "borderline cases" should be allowed to proceed. *Id.* The threshold at the first stage is low because a *pro se* defendant will likely be unaware as to the precise legal basis for his claim. *Hodges*, 234 Ill. 2d at 9. Notwithstanding this low threshold, a petitioner must still clearly set forth in his petition the manner in which his constitutional rights have been violated, and the issues raised in the petition "must bear some relationship to the issue[s] raised on appeal." *Id.*; *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48.

¶ 27    Further, the appellate court is not free, as is the supreme court pursuant to its supervisory authority, to excuse waiver caused by the failure of a defendant to include issues in his or her petition. *People v. Jones*, 213 Ill. 2d 498, 506-08 (2004). In fact, our supreme court has criticized this court on more than one occasion for overlooking waiver of new claims on appeal and instead addressing the merits of such claims. *People v. Reed*, 2014 IL App (1st) 122610, ¶ 43 (citing *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006)); see also *Jones*, 213 Ill. 2d at 506 (stating "our appellate court has repeatedly overlooked the waiver language of section 122-3"). Rather, where

a claim is omitted in the *pro se* petition, the defendant's recourse is to seek leave of court to file a successive postconviction petition asserting the new claim. *Jones*, 213 Ill. 2d at 509; see also 725 ILCS 5/122-1(f) (West 2018).

¶ 28    The foundational case on forfeiture of claims not included in a postconviction petition is *People v. Jones*. In that case, the defendant filed an initial *pro se* postconviction petition alleging simply that he was denied effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution, nothing more. 213 Ill. 2d at 502. His attached affidavit included only his notarized signature attesting to the truthfulness of the petition but contained no additional information. *Id.* The circuit court summarily dismissed the petition because the defendant failed to assert any claim at all. *Id.* On appeal, the defendant argued that the circuit court erroneously admonished him, and his appointed counsel gave erroneous advice, and he requested that he have the opportunity to move to withdraw his guilty plea. *Id.* at 502-03. The appellate court affirmed the circuit court's dismissal of the petition. *Id.* at 502.

¶ 29    In acknowledging the challenges presented to *pro se* litigants when filing petitions under the Act, the *Jones* court first discussed the "practical drawbacks to the three-stage process set forth in the Act[.]" *Id.* at 504-05. Specifically, the court stated:

"[T]he typical *pro se* litigant will draft an inartful pleading which does not survive scrutiny under the 'frivolity/patently without merit' standard of section 122-2.1, and it is only during the appellate process, when the discerning eyes of an attorney are reviewing the record, that the more complex errors that a nonattorney cannot glean are discovered. The appellate attorney, not wishing to be remiss in his or her duty, then adds the newly discovered error to the appeal despite the fact that the claim was never considered by the trial court in the course of its ruling. *** [T]he attorney is zealously guarding the client's

rights and is attempting to conserve judicial resources by raising the claim expeditiously at the first available chance. These goals are laudable, but they nonetheless conflict with the nature of appellate review and the strictures of the Act." *Id.*

Even so, the court resolved that claims not included in the defendant's petition may not be raised for the first time on appeal and affirmed the dismissal of the petition. *Id.* at 508-09.

¶ 30      Whether a claim has been forfeited depends on the precise allegations in the petition as compared to the claims made in the appellate brief on appeal. *Reed*, 2014 IL App (1st) 122610, ¶ 59 (where the petition and brief both alleged appellate counsel error but on different constitutional grounds, appellate claims were deemed forfeited); *Mars*, 2012 IL App (2d) 110695, ¶¶ 31-33 (where the petition alleged trial counsel error and brief on appeal alleged appellate counsel error, appellate claims were deemed forfeited; see also *Thomas*, 2014 IL App (2d) 121001 (where evidentiary error claimed in petition was merely reframed on appeal). Thus, we must compare defendant's claims on appeal with the precise allegations in the postconviction petition. This is a highly fact-specific inquiry. Thus, below, we set forth in detail the allegations in defendant's post-conviction petition and then also his claims on appeal.

¶ 31                                     1. Allegations in the Petition

¶ 32      In his postconviction petition, defendant identified three issues. Each of those issues contains a variety of allegations, which we recite here as follows: (1) his sentence violated the proportionate penalties clause where an offense with identical elements received a different sentence; (2) his sentence is disproportionate because the victim did not suffer great bodily injury and there was no intent to kill; (3) his sentence is also disproportionate under Public Act 100-1182 as applied to petitioner; (4) he was denied effective assistance of trial counsel because counsel

failed to request a Illinois Supreme Court Rule 402 conference;[2] (5) plea counsel did not tell him the minimum sentence for first degree attempted murder; and (6) he was 18 years old and relied on counsel's legal advice; (7) his plea was invalid because he did not understand the direct results of the plea, including the waiver of his rights and the sentencing range; and (8) the court did not have jurisdiction to sentence defendant without a PSI report. Additionally, in his affidavit, defendant averred that (1) his counsel informed him that if he did not take the plea, he would be forced to go to trial and would face more time and (2) he did not waive his right to a PSI report and if one had been prepared, "it is a strong probability" that he would have received a lesser sentence.

¶ 33                          2. Claims on Appeal

¶ 34      On appeal, defendant asserts two claims in support of his contention that his guilty plea is invalid. Although awkwardly intertwined throughout the appellate brief, defendant's arguments comprise two discrete claims. The one claim asserts a violation of the proportionate penalties clause and the other,  ineffective assistance of counsel related to sentencing. We separately set both claims out in detail below.

¶ 35                      a. Proportionate Penalties Claim

¶ 36      Defendant claims that counsel should have informed him that, following a trial, it was possible that he might receive less than a life sentence in light of his age based on *Miller v. Alabama*, 567 U.S. 460, 489 (2012), and its progeny in Illinois.  Briefly, *Miller* and the cases which followed, suggest that young adults, if shown to be more similar to a juvenile, may not be sentenced

---

[2] Rule 402(d) provides that, at the request of the parties, prosecution and defense counsel can meet with the judge to advise him or her of a proposed plea agreement and learn, in advance of a plea, whether he or she would accept the plea and what sentence would be imposed should the defendant plead guilty. Ill. S. Ct. R. 402(d) (eff. July 1, 2012).

to a natural or *de facto* life sentence without a sentencing hearing that considers the defendant's youth and its attendant characteristics. See *People v. Harris*, 2018 IL 121932, ¶¶ 37-48 (discussing *Miller* and its progeny and application to emerging adult defendants). Defendant asserts that based on his age, he might have been permitted a *Miller*-compliant sentencing hearing that conceivably would have been limited to a sentence of 40 years or less. Because counsel did not inform him of this possibility, he argues that his plea was invalid.

¶ 37      In our view, defendant has deconstructed the three separate issues in his petition in which he alleges a violation of the proportionate penalties clause and disproportionate sentencing and reconstructed them to assert a single *Miller* based proportionate penalties claim here on appeal. Clearly the allegations in the petition and the claims on appeal share some commonalties. Both mention the proportionate penalties clause; the length of sentence; age; and plea counsel's advice. Significantly, however, the allegations in the petition were dispersed throughout and were not consolidated to identify one single issue. Thus, even allowing a liberal construction, we find that defendant has not set forth the same claim on appeal as was alleged in the petition. Moreover, despite the commonalities between the claims, at no point in his petition does defendant reference *Miller* or any of the cases that followed it. See *People v. Cathey*, 2012 IL 111746, ¶¶ 19-21 (the defendant did not properly raise a *Patrick* violation where the defendant did not cite or reference *People v. Patrick* anywhere in his postconviction petition). Defendant made several disparate claims in his petition that cannot now be combined on appeal to create a new claim, and as such, we find this claim to be distinct from the allegations contained in defendant's petition.

¶ 38      Additionally, we reject defendant's argument that his reference to Public Act 100-1182 in his petition was an invocation of *Miller* and its subsequent jurisprudence. Public Act 100-1182 established a parole review for offenders who were committed certain crimes while under the age

of 21. Pub. Act 100-1182 (eff. June 1, 2019) (amending 730 ILCS 5/5-4.5-110). Under the new statute, a person under 21 years of age at the time of commission of first-degree murder and is sentenced on or after the effective date of the act shall be eligible for parole review after serving 20 or more years of his or her sentence, excluding those subject to a sentence of natural life. *Id.* Although the amendment bears some relationship to the evolving approach to sentencing young adults, we cannot go so far as to say it is a clear assertion of a *Miller*-based challenge, particularly where defendant did not explain his reference to the legislation.

¶ 39    As our supreme court noted in *Jones*, appellate counsel's attempts to raise claims for the first time on appeal from a summary dismissal of a postconviction petition are understandable and certainly expected but are nevertheless not permitted. We find it laudable that appellate counsel here has crafted a more artful and complex claim from the disjointed allegations asserted in defendant's petition. That notwithstanding, the circuit court was not given the opportunity to review the claim that defendant now raises on appeal, which is a prerequisite for our review on appeal. See *Schili Leasing, Inc. v. Forum Insurance Co.,* 254 Ill. App. 3d 731, 746 (1993) ("A trial court cannot err in failing to decide an issue not presented to it for decision."); *Rogers v. Gehrke,* 77 Ill.App.2d 343, 347 (1966) ("It is unfair to permit us to sit in review of a trial judge unless he had an opportunity to consider the same question presented to us."). Accordingly, we find that defendant has forfeited this claim on appeal for failing to raise it in the circuit court within his postconviction petition.

¶ 40                    b. Ineffective Assistance of Plea Counsel

¶ 41    Defendant's other claim on appeal is that he was misadvised on the possible sentencing range he faced upon a conviction at trial. Specifically, he claims that he was informed that if he was convicted of all counts of attempted first degree murder, the sentence for each count would

run consecutive to each other. As such, defendant claims that he was led to believe that he faced a mandatory minimum of 135 years in prison if found guilty of all five counts of attempted murder. He maintains, however, the mandatory consecutive sentencing would only apply to the offense of attempted first degree murder of the injured victim who suffered "great bodily harm" while the sentences for the other four counts would run concurrently. Citing *People v. Brown*, 2017 IL 121681, which addresses ineffective assistance of plea counsel, defendant asserts that he has demonstrated arguable prejudice.

¶ 42    As with the proportionate penalties claim, for purposes of our forfeiture determination, we must compare defendant's claims here on appeal with the allegations in his petition. In the petition, defendant asserted that he was not adequately advised by counsel of the potential penalties for the offenses if he were to go to trial. Citing *Brown*, 2017 IL 121681, which as we have noted addresses ineffective assistance of plea counsel, defendant alleged that he demonstrated arguable prejudice. He additionally alleged that his guilty plea was invalid under the due process clause.[3]

¶ 43    The seminal case for ineffective assistance claims, *Strickland v. Washington*, 466 U.S. 668 (1984), is not referenced by defendant. Despite defendant's election to cite caselaw other than the familiar *Strickland* case, we nonetheless understand the claim to be one for ineffective assistance, requiring for its resolution application of *Strickland's* two-prong test. In our view, defendant's claim raised on appeal bears some relationship to the allegations in the petition. Thus, the two cannot be said to be separate and distinct. Moreover, the circuit court expressly considered and rejected defendant's ineffective assistance of plea counsel claim. Accordingly, we deem

---

[3] Significantly, the requirement that a plea be voluntary and knowing is pursuant to the due process clause of the United States Constitution (*Boykin v. Alabama*, 395 U.S. 238, 245 n. 5 (1969)), and the voluntariness of a plea depends on whether the defendant had effective assistance of counsel (*People v. Correa*, 108 Ill. 2d 541, 549 (1985)).

defendant's ineffective assistance claim to be properly before us on review and we therefore address it on the merits.[4]

¶ 44    Under the sixth amendment of the United States Constitution (U.S. Const., amend. VI), a criminal defendant has the right to receive effective assistance from defense counsel at all critical stages of the criminal case, including the entry of a guilty plea. *People v. Brown*, 2017 IL 121681, ¶ 25. In determining whether a defendant was denied effective assistance of counsel, we employ the two-prong test set forth in *Strickland*, and adopted by Illinois courts in *People v. Albanese*, 104 Ill. 2d 504, 525-27 (1984). To satisfy the test, a defendant must establish that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient performance. *People v. Hall*, 217 Ill. 2d 324, 335 (2005). However, at the first stage of postconviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. "Because a defendant must satisfy both prongs of the *Strickland* test to prevail, the failure to establish either precludes a finding of ineffective assistance of counsel." *People v. Cherry*, 2016 IL 118728, ¶ 24. For the reasons that follow, we find that defendant cannot satisfy either prong.

¶ 45    For guilty plea defendants, the first prong requires a showing that counsel failed to ensure that the defendant entered the plea knowingly and intelligently. *People v. Rissley*, 206 Ill. 2d 403, 457 (2003); see also *People v. Hillenbrand*, 121 Ill. 2d 537, 554 (1988) ("Due process requires

---

[4] The State's additional arguments that defendant's claims are barred due to defendant's waiver of nonjurisdictional errors, the application of non-retroactivity principles, and the application of United States Supreme Court precedent, are only relevant to defendant's proportionate penalties clause claim and thus, we need not address them as to defendant's separate claim of ineffective assistance of plea counsel.

that a guilty plea not be accepted unless it appears to be knowing, intelligent[,] and voluntary."). Defendant specifically contends that he was incorrectly advised that *each* of the sentences associated with the offenses as to the uninjured victims would be served consecutively. As a result, he maintains that his plea was not knowing.

¶ 46    A review of the record shows that defendant was not misadvised as to the possible sentencing options should he opt to proceed to trial. Based on the charges, defendant was subject to the following possible sentences.

¶ 47    In regard to count I, attempt first degree murder involving the use of a firearm and resulting in great bodily harm is a Class X felony, which carries a sentence of 6 to 30 years. The use of a firearm mandates an additional sentence of 25 years to life, resulting in a minimum sentence of 31 years and a maximum sentence of natural life. 720 ILCS 5/8-4(c)(1)(D) (West 2014); 730 ILCS 5/5-4.5-25(a) (West 2014). Defendant was also subject to an extended term because the felony offenses were committed against individuals under 12 years of age. 730 ILCS 5/5-8-2, 5-5-3.2(b)(3)(i) (West 2014)). The sentence for attempt first degree murder would be consecutive to any other sentences. 730 ILCS 5/5-8-4(d)(1) (West 2014). Defendant was also charged with attempt murder (720 ILCS 5/8-4(a), 5/9-1(a)(1) (West 2014)), aggravated battery (720 ILCS 5/12-3.05 (West 2014)), and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a) (West 2014)) as related to the uninjured victims. The minimum sentence for these charges would be 4 years (720 ILCS 5/24-1.2(a) (West 2014); 730 ILCS 5/5-4.5-30 (West 2014)), and the maximum would be 45 years (720 ILCS 5/8-4(c)(1)(b), 5/9-1(a)(1) (West 2014); 730 ILCS 5/5-4.5-25 (West 2014)). The sentences for these charges would be served concurrently. 730 ILCS 5/5-8-4 (West 2014). The point is, given the various offenses charged, there are innumerable permutations of the various sentencing ranges that could result in a variety of possible sentences.

¶ 48    During the hearing on defendant's plea, he was informed of the accurate sentencing range for attempt first degree murder—31 years to life imprisonment. He was also informed that he was eligible for an extended term and that he was subject to consecutive sentences. Moreover, at no point was defendant explicitly advised that he would have been sentenced to 135 years in prison if he went to trial. "Where the record rebuts the allegations in a petition, summary dismissal is proper." *People v. Trujillo*, 2012 IL App (1st) 103212, ¶ 12. Requiring defense counsel to predict and explain the myriad ways in which a client will be impacted by a conviction would be unreasonable. *People v. Hughes*, 2012 IL 112817, ¶ 59; see also *People v. Glover*, 2017 IL App (4th) 160586, ¶ 36 (defendant's alleged misapprehension of the possible maximum sentence for two dismissed charges did not render his guilty plea invalid). Thus, based upon the various sentencing options, counsel was correct in advising defendant that he faced more time, potentially a life sentence, if he went to trial.

¶ 49    Further, to the extent that counsel did misadvise defendant on the possible sentencing outcomes at trial, such advice was cured by the State's and the circuit court's statements during the plea hearing. See *People v. Unzueta*, 2017 IL App (1st) 131306-B, ¶ 28 (where counsel's failure to advise the defendant of the immigration consequences of his guilty plea was cured by the trial court). The record shows that the State, in open court and prior to the court's reiteration to defendant of the plea agreement, advised the court that it had agreed to "*nolle* what would be additional consecutive counts." Subsequently, the court reiterated the plea agreement to defendant, without mention of the possible consecutive counts. In a concluding statement following the State's offer of the factual basis for the plea, the State commented that it was forsaking "what would have been mandatory consecutive sentences as to the other victims." Although the State referenced the requirement that the dismissed counts would have been consecutive, the record does

not demonstrate that defendant was in any way misadvised concerning the possible sentence either by the State, by the Court, and clearly not by defense counsel. Based upon our review of the plea proceedings, we do not find that defendant was misadvised concerning the possible sentence. We find no basis in the record upon which to conclude that defendant's plea was not given voluntarily and knowingly. Thus, defendant has failed to satisfy the first prong of *Strickland.* Accordingly, his claim of ineffective assistance of plea counsel, as well as his due process claim, fails.

¶ 50    Although failure to demonstrate either prong is fatal to an ineffective assistance of counsel claim, we nonetheless address the second prong of the *Strickland* test. To meet the second prong, "a guilty-plea defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). To this point, our supreme court has held that a " 'conclusory allegation' " is insufficient in a guilty-plea case. *Id.* (quoting *People v. Valdez*, 2016 IL 119860, ¶ 29). Rather, the defendant " 'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *Valdez*, 2016 IL 119860, ¶ 29 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)); see also *People v. Deltoro*, 2015 IL App (3d) 130381, ¶ 22. Typically, in cases where the claim is related to a defendant's defense strategy or chance of acquittal, "this court requires a claim of innocence or a plausible defense to establish prejudice." *Brown*, 217 IL 121681, ¶ 45. Where a defendant alleges that plea counsel failed to advise him as to consequences of pleading guilty, a court "compare[s] the consequences of a defendant's conviction following a trial to the consequences of the defendant entering the guilty plea." *Brown*, 2017 IL 121681, ¶ 36 (citing *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017)). Ultimately, "[t]he question of whether counsel's alleged deficient performance caused the defendant to plead guilty depends in large part on predicting whether he

likely would have been successful at trial." *Hall*, 217 Ill. 2d at 336. Stated another way, "would [defendant] have been better off rejecting the plea offer and insisting on a trial." (Internal quotations and citations omitted.) *People v. Hatter*, 2021 IL 125981, ¶ 30.

¶ 51     As we have previously noted, defendant's claim relates to the sentencing consequences of a potential conviction following a trial, but he also asserts "plausible defenses." Specifically, defendant claims that he has shown arguable prejudice where evidence of "great bodily harm" and "intent" are questionable, both of which would have been required for the most severe sentencing consequences had he gone to trial. He also claims that it would have been rational to forgo a 34-year sentence if he had been made aware that "the proportionate penalties clause provided some protection against him dying in prison[.]" As is apparent, defendant has conflated both of his claims, making it unnecessarily difficult for this court to determine where one claim ends, and one begins.

¶ 52     Nevertheless, the allegation that the proportionate penalties clause would affirmatively limit his sentence to less than life is not only conclusory, but pure conjecture. There is nothing in defendant's petition to support that allegation, other than the fact that he was 18 years old at the time of the offenses. Moreover, the proportionate penalties clause does not guarantee a young adult defendant a sentence of less than life. The case law, as it currently stands is to the effect that if a youthful offender can demonstrate that his brain was more similar to a juvenile's at the time of the offense, then the sentencing court must consider the *Miller*-factors in determining the appropriate sentence. See *People v. Hilliard*, 2021 IL App (1st) 200112, ¶ 25.

¶ 53     Defendant asserts, without more, that proof of intent and great bodily harm were not foregone conclusions in relation to the offenses charged against him, and thus, his sentence could

have potentially been lesser than counsel and the trial court suggested at the plea hearing, making it rational for him to have rejected the plea offer. We briefly address and reject these contentions.

¶ 54    "The offense of attempted murder is shown when the State proves, beyond a reasonable doubt, that the defendant, with the specific intent to kill, commits any act which constitutes a substantial step toward the commission of murder." *People v. Valentin*, 347 Ill. App. 3d 946, 951 (2004). Specific intent to kill for the offense of attempted murder "has routinely been found in cases where a defendant shoots someone while firing into a crowd, even if he or she was not aiming at the person who was shot." *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 68. Here, the charges against defendant alleged that he shot towards a group of children, injuring one of them, and that defendant admitted to doing so when taken into police custody. Accordingly, we find defendant's suggestion of a defense to the charges of attempt first degree murder to be without merit.

¶ 55    "[T]he term *great bodily harm* is not susceptible of a precise legal definition, [but] it requires an injury of a greater and more serious character than an ordinary battery." (Emphasis in original.) *People v. Mimes*, 2014 IL App (1st) 082747-B, ¶ 29. "Bodily harm as it relates to ordinary battery requires 'some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent.' " *Id.* (quoting *People v. Mays*, 91 Ill. 2d 251, 256 (1982)). A gunshot wound does not necessarily satisfy the great bodily harm requirement. See *People v. Ruiz*, 312 Ill. App. 3d 49, 62–63 (2000) (gunshot wound to the police officer's knee was not a severe bodily injury where the wound was barely visible on the day of the incident and the officer did not immediately seek medical treatment); *People v. Durham*, 303 Ill. App. 3d 763, 770 (1999) (battery victim's gunshot injury, which required no medical attention and was described as a mark, small nick or a cut, was not a severe bodily injury for sentencing purposes). However,

here, the State's factual basis clearly stated that the injured victim was taken to the hospital for medical treatment of the gunshot wound. For that reason, we do not find it arguable that a finding of great bodily harm would not be warranted in this case.

¶ 56 We conclude that neither of these alleged defenses were plausible to the point where they would have resulted in a lesser sentence had defendant chosen to proceed to trial. Thus, even if counsel had misadvised defendant as to the potential sentencing range, in our view, defendant would not have been better off going to trial. As such, he has failed to demonstrate that he was prejudiced.

¶ 57 By pleading guilty, defendant received only a single attempted first-degree murder conviction, which was a Class X felony due to defendant causing great bodily harm to the victim and included a 25 years' to natural life mandatory firearm enhancement, with a low-range sentence of 34 years' imprisonment, where the minimum sentence was 31 years. It is hard to imagine how rejection of the State's plea offer in this case would have been rational given the range of sentencing possibilities confronting this defendant, most of which greatly exceeded the sentence he actually received. Thus, we conclude that defendant has not shown arguable prejudice under the second prong of *Strickland*.

¶ 58 Because we find that defendant has not presented the gist of an ineffective assistance of plea counsel claim, we must conclude that defendant's postconviction petition was not entitled to further proceedings under the Act. Accordingly, the circuit court's summary dismissal of the defendant's postconviction petition was proper.

¶ 59 III. CONCLUSION

¶ 60 For the reasons stated, we affirm the judgment of the circuit court.

¶ 61 Affirmed.